Oliver P. Tillinghast and another *vs.* Nourse, Stone & Co.

No. 78.—OLIVER P. TILLINGHAST and another, plaintiffs in error, *vs.* NOURSE, STONE & Co. defendants in error.

[1.] By the Act of 1847, "To authorize parties to compel discoveries at Common Law", an order had to be obtained in *open Court*, requiring the adverse party to answer the interrogatories. By the Amendatory Act of 1850, the order could be obtained, either *in term time* or from a Judge of the Superior or Justice of the Inferior Court in vacation. But neither one of these Magistrates would have Jurisdiction to act in a case, pending in the Court of the other.

[2.] Notwithstanding a continuance has been improperly denied to a party, still this Court will not, for that reason, order a new trial, provided the party has sustained no injury.

[3.] It is no good objection that a payment was made, for the express purpose of preventing the Statute of Limitations from running, provided it was made *bona fide*, and without fraud or collusion between the debtor and creditor.

[4.] A payment made on a joint note within six years, is sufficient to take it out of the Statute of Limitations, as against a co-promiser.

[5.] The correctness of this doctrine—doubted; but it having been considered the settled Law of the State, for at least a quarter of a century, it is a question for Legislative, rather than Judicial interference.

Suit upon notes in Muscogee Superior Court. Tried before Judge IVERSON, May Term, 1853.

This action was upon three notes—all dated January 1st, 1845—one for $300, due at sixty days; one for $304, due at four months; and one for $615 $\frac{95}{100}$, due at six months, and all

VOL. XIV. 81

signed by O. P. Tillinghast and P. J. Tillinghast. Upon each of the said notes was a credit for $28 $\frac{70}{100}$, dated Dec. 16, 1850. The suit was brought in the Superior Court, July, 1852, and a plea of Statute of Limitations filed.

The defendants filed interrogatories for the plaintiffs, *Nourse, Stone & Co.* inquiring of them as to the credits, and seeking to prove by them, that they were entered by O. P. Tillinghast for the purpose of keeping the notes from being barred by the Statute of Limitations. The interrogatories were answered by only one of the partners, and evasively. The order allowing the interrogatories, was granted by one of the Justices of the Inferior Court.

Upon the trial, defendants objected to the answers to the interrogatories, on the ground that they were answered only by one partner, and by him evasively. The Court, however, ruled that the interrogatories were improperly sued out, the Justice of the Inferior Court having no authority to grant the order, and overruled the objection.· This decision is assigned as error.

Defendant's counsel then moved the Court for a continuance, on the ground that he had been misled by the phraseology of the Act of the Legislature, in taking out the interrogatories. The Court refused the motion, and this is assigned as error.

Defendants' counsel requested the Court to charge, that "the credits on the notes being in the hand-writing of O. P. Tillinghast, without proof that they were made with the knowledge, privity or consent of the said P. J. Tillinghast, and without proof that they were made at the time, or that any payment was actually made, were not sufficient to prevent the Statute of Limitations from barring the action, as to P. J. Tillinghast". The Court declined so to charge, but charged that "the entry being in the hand-writing of O. P. Tillinghast, was sufficient to charge his co-defendant".

Which charge, and refusal to charge, are assigned as error.

Jones & Jones, for plaintiff in error.

W. DOUGHERTY, for defendant in error.

Judge BENNING having been of counsel, did not preside in this case.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This case being called for trial, the plaintiffs announced themselves ready. The defendants having filed interrogatories, to be answered by the plaintiffs, under the Laws of this State, authorizing discovery to be obtained at Common Law, objected to the same, as taken and returned into Court, on two grounds : First, because one of the three plaintiffs, only, had answered. Secondly, because Brooks, who did depose, answered evasively, in this—that while he states that the credit put upon the several notes sued on, was *bona fide,* consisting, as it did, of the amount due by plaintiffs to O. P. Tillinghast, for commissions on the purchase of cotton, he does not say whether these credits were not entered to prevent the Statute of Limitations from running; but refers to Mr. Tillinghast as the best exponent of the motive that influenced his conduct in making these credits.

To these objections to the interrogatories, the plaintiff replies that the order directing the commission to issue for the examination of the plaintiffs, emanated from a Justice of the Inferior Court; whereas, the case in which the testimony is to be used, is pending in the Superior Court. It is insisted, therefore, that the witnesses are not compelled to answer ; and that the defendant can take nothing by their failure to do so.

[1.] We are thus called on to put a construction on the Act of 1847, " to authorize parties to compel discoveries at Common Law", and the Statute amendatory thereof, passed in 1850. The former recites, " That from and after its passage, any party, plaintiff or defendant, in any action at Common Law, pending in any Superior or Inferior Court of this State, wishing a discovery from the adverse party, to be used in evidence at the

trial of such action, may file written interrogatories to such party, and call upon him to answer the same in solemn form, on oath or affirmation; and if, upon such interrogatories being filed, it shall appear to the Court, by the oath of the party filing the same or otherwise, that answers to such interrogatories will be material evidence in the cause, and that the interrogatories, themselves, are pertinent, and such as the adverse party would be bound to answer, upon a Bill of Discovery, in a Court of Chancery, the Court shall allow such interrogatories, and shall make an order requiring the adverse party to answer the same in writing, and in solemn form, on his oath or affirmation'', &c.

By the 1st section of the Amendatory Act of 1850, it is provided, "That from and after the passage of this Act, wherever any party, plaintiff or defendant, in any action at Common Law, pending in any Superior or Inferior Court of this State, shall wish to avail himself or herself of the provisions of the Act assented to on the 17th December, 1847, entitled, an Act 'to authorize parties to compel discoveries at Common Law', it shall and may be lawful for such party to make and present his or her interrogatories to the Court in which such action is or may be pending, to a Judge of the Superior Court or Justice of the Inferior Court in vacation; and when such interrogatories are presented in vacation, and are allowed by such Judge or Justice, and the said Judge or Justice shall make and grant an order requiring the adverse party to answer the same in writing, in solemn form, on oath or affirmation, &c."

It is conceded that under the first of these Acts, the application had to be made, not only in term time, but to the Court in which the suit was pending. But it is insisted, that under the last, application may be made, not only in vacation, but to the Judge of the Superior or Justice of the Inferior Court, at the option or convenience of the suitor, and without regard to the Court where the suit may be pending.

In construing Statutes and all other writings, I recognize but one rule. I discard the idea of liberal or literal, latitudinous or strict interpretation; my wish and aim is, honestly

and in good faith, to endeavor to find out what was the meaning of the law-makers or parties to the contract ; and then to carry out that intention.

What did the Legislature, then, propose to accomplish by the Act of 1850 ?  Evidently to remedy a mischief, which, by a short practice, was found to exist in the previous Act of 1847 ; and that was, that leave to examine the adverse party, plaintiff or defendant, could only be obtained in Court during term time.  To obviate this evil, it is provided that application for this purpose may be made in vacation also.  But we are satisfied that it never could have been intended to say, that it was immaterial whether the application was made to the Judge of one Court or the other.

There are many obvious objections to this construction.— Whenever an application of this sort is made, the Judge or Justice is clothed with authority to examine into the matter, in order to be satisfied that the testimony is material, and that the discovery would be such as the party would be entitled to obtain, in answer to a bill for discovery.

Would the Judge of the Superior Court undertake to determine that the evidence which is sought, would or would not be material in a cause pending before the Inferior Court?  And so, *vice versa,* would a Justice of the Inferior Court ever venture to decide that the evidence applied for, would or would not be material in an action of ejectment, to try titles to land in the Superior Court, and which tribunal, alone, has jurisdiction of the subject-matter ?  And further—that it is such proof as might or might not be elicited from the conscience of the party, in answer to a bill for discovery.

There is another difficulty.  Suppose the Clerk of the Superior Court should refuse to obey the order of the Justice of the Inferior Court, to whom would he be amenable for this contempt ?  Certainly not to the Judge of his own Court, where the cause is pending ; for he has been guilty of no disobedience to his mandate.  Nor can he, we apprehend, be made answerable to the Justice of the Inferior Court, who has issued his order in vacation.  His functions have been performed, and he can never again get jurisdiction of the case.  *Quoad,* as to him,

every trace of the proceeding, except the order which he granted, and which is of file in the Superior Court, is obliterated.

There is still another view of this question. If the application be made in *open Court*, it must be done in that Court where the case is pending. Why apply a different rule, when the application is made in vacation? Would not the whole Bench of the Inferior Court, composed of five members, in term time, be as competent to perform this office, as one of the five in vacation? But if the whole Bench, in term time, cannot grant the order to take testimony to be used in a cause pending in the Superior Court, why should it be supposed that one Justice is capable of doing this in vacation?

Our opinion is, that to preserve the symmetry of the Law, and to avoid a conflict of jurisdictions, we are constrained to hold that the order granted by the Justice, in this case, was without authority, and void.

We hope the Legislature will go one step further, and dispense with this preliminary order altogether, and allow the interrogatories to issue, as a matter of course; and what is equally or still more important, authorize a *viva voce* examination of parties upon subpoena, the same as other witnesses. *When will our people cast off their superstitious reverence for the past!*

[2.] The objections to the interrogatories, on the grounds that Brooks had not answered fully, but evasively, and that the other two plaintiffs, Stone & Nourse, had not answered at all, being thus overruled, because the commission had issued illegally, counsel for defendants moved to continue the case.

We rather incline to the opinion, that the continuance which was refused, should have been allowed. But the defendants have not been injured; for, conceding all they propose to prove by these witnesses who did not testify:

[3.] And admitting that if Brooks had answered fully, he would have sworn that O. P. Tillinghast made these payments with the express view of preventing the Statute of Limitations from running; yet, if the payments were *bona fine* made, without fraud or collusion, and none such is charged or pretended,

we hold they were sufficient to prevent the Statute from running.

I hold a joint or partnership note, which has been over-due several years; I call upon one of the partners or joint-contractors, to get a partial payment, to keep the note within the Statute. Is there anything wrong in this? Is it not the every day's practice? There may be some ingenuity, but we cannot think much soundness in this defence. We never recollect to have heard such a plea before—we cannot believe that it is good.

And thus it will be perceived, that if our construction of the Amendatory Act of 1850 is wrong, the defendants are not damnified, for the same reason that they were not by refusing the continuance. And that is, that the evidence, if obtained, could not have availed them any thing.

[4.] And this brings us to the last and main point argued in this case; and that is, whether a payment made by one of two or more joint-contractors, within the Statute, and before its bar has attached, constitutes a new starting point for the Statute?

We think it does so operate. Such was the decision of this Court, in *Cox vs. Baily*, (9 *Ga. Rep.* 467.) I did not preside in that cause, (the Reporter neglected to state the fact,) owing to my previous professional connection with the estate of Cox, the plaintiff's testator; and because my testimony was taken to prove the credit indorsed on the note, while it was in my hands, as the attorney of the estate. This Court, however, did but re-affirm, in that case, the same principles announced by the Judges in Convention, in *Brewster vs. Hardeman and others*, (*Dudley's Reports*, 138,) to wit: that the acknowledgement of a debt or promise to pay it, made by one partner, after the dissolution of the firm, and after the debt has been barred by the Statute, will not revive the debt against the former partners. But that according to "precedent" and "authority", the admission of a debt, by one partner, after dissolution, but before the Statute has interposed its bar, will be

binding on the other partners, so far as to constitute a new point, from which the Statute will commence running.

The same rule applies to joint-contracts, as to partnership notes. And this doctrine has been considered the settled Law of the State, for a quarter of a century, at least. And for that reason, if for no other, should be changed only by the Legislature.

[5.] We know that the correctness of the principle, that the admission of one joint-contractor or partner binds the other, has been frequently doubted, and sometimes denied. The doctrine was first laid down by Lord Mansfield, in *Whitcomb vs. Whiting*, (*Douglas*, 652.) And it is founded upon the idea, that the bar created by the Statute, rests entirely upon the presumption that the debt has been paid, and that such an acknowledgement or payment, removes the presumption and revives the original promise. And the conclusion is, that in this, as in other cases, an acknowledgement by one of many who are jointly concerned, is evidence against all, sufficient to remove the presumption of payment. This is the explanation given by Best, C. J., in *Perham vs. Raynol*, (2 *Brigham*, 306.) And this is the explanation given by Lord Mansfield, in *Douglass*, 652. He says: " An acknowledgement of one, is an admission of all, and the Law raises the promise to pay, when the debt is admitted to be due.

But I must say, that this principle has not only been questioned in England, (1 *B. & Alds.* 467,) but from the examination by the Supreme Court of the United States, in *Bell & Morrison*, (1 *Peters. S. C. R.* 363,) the foundation on which it rests, found to be altogether unsatisfactory. In Pennsylvania, and some of the other States, it has been utterly exploded. (*Levy vs. Cadet*, 17 *Serg. & Rawle*, 126. 4 *Greenleaf*, 140.) See cases collected on this head, in 2 *Pick. Rep.* 2*d.* ed. 583, *n.* 1.

And, considering that the Statute of Limitations was intended to be a Statute of repose—that it is a wise and beneficial Law having a tendency to produce adjustments of affairs between parties, while they remain fresh in their recollection,

and before time, in its lapse, has thrown darkness and obscurity upon them, I am not sure but that the latter is the better policy. But I repeat, that for myself, I do not consider this question as *res integra.*