BUFFINGTON *et al. v.* THOMPSON *et al.*

1. A plea filed by one named as a grantee in a deed, alleging that the same had been " executed " by a deceased person, does not necessarily aver that the deed had been signed, sealed and delivered to such grantee; and where it appears from other allegations in the plea that the word " executed" was used not in its strict, technical sense, but in the sense of the word " signed," the plea should not in any event be treated as a conclusive admission by the defendant that the deed in question had been actually delivered to and accepted by him, nor as rendering him liable to comply with conditions inserted therein for the benefit of other persons.

2. In so far as the case made by the plaintiffs' petition rested upon the validity of the deed in question, they had no right to any

relief, for the reason that the deed, never having been delivered nor accepted by the grantee, was ineffectual and void.

3. As the plaintiffs, in the amendment to their petition, claimed an interest in the land in controversy, and prayed for its sale, the defendant's answer in the nature of a cross-action praying for a partition by sale was germane, and upon the facts in evidence the right result was reached, and the motion in arrest of judgment was properly overruled.

May 11, 1896. Argued at the last term.

Equitable petition. Before Judge Kimsey. Hall superior court. January term, 1895.

James M. Thompson died leaving a widow and seven children. An eighth child, Jane Dunagan, had died before his death, leaving four children. He left among his papers a deed which he had executed on January 5, 1890, but had never delivered. This deed is from James M. Thompson to his son Raymond A. Thompson, and by it to the grantor, in consideration of love and affection, "gives, grants and conveys" to the grantee, his heirs and assigns, 100 acres of land described, "upon the following conditions, to wit, when the said Raymond A. Thompson shall pay to the heirs of his sister Jane Dunagan, children four in number [naming them], fifty dollars to each child as named in this deed, the same being left to them by James M. Thompson their grandfather, in the hands of Raymond A. Thompson to pay to each heir at the death of James M. Thompson." In closing, the deed states: "The said James M. Thompson and his wife, Sarah Ann Thompson, has the control of the farm and house as long as she remains a widow after the death of James M. Thompson; if his wife Sarah shall marry another man, she forfeits everything that I have given her and she gets nothing."

To the January term, 1894, of the superior court, the children of Jane Dunagan brought their petition alleging, that by this deed the grantor made the sums of $50 each payable to them a charge on the land thereby conveyed, creating a trust in the land in the hands of R. A. Thompson

27

for their benefit to the extent of said sums, that the same were due, but that R. A. Thompson had refused to pay them or to have anything to do with the land. They prayed, that he be required to pay them $50 each, with interest from the death of the grantor; that said sums be declared a lien and charge upon the land; and, in the event R. A. Thompson refused to accept the land and pay said charges and be held not liable for said sums personally, that a commissioner be appointed to sell the land subject to the rights of the widow, and pay plaintiffs said amounts out of the proceeds, and the balance to the administratrix of J. M. Thompson. By amendment they alleged, that R. A. Thompson has accepted the deed; that if it should appear that he has not, they pray that he be required either to accept or not accept it; and that plaintiffs are entitled to one eighth of the estate of J. M. Thompson, and have received nothing, while each of the other distributees received during his lifetime, in land and other property, advancements more than $200, and plaintiffs are entitled to be made even out of this land, the remaining property of their grandfather, before the other heirs or R. A. Thompson receive anything; and they pray, in the event the land be sold, that they be paid $200 with interest from the death of J. M. Thompson, in preference to the claim of the other heirs.

To this petition pleas were filed by R. A. Thompson, and by the widow of J. M. Thompson, who was his administratrix. At the trial, January, 1895, R. A. Thompson withdrew (by permission of the court and over objection of plaintiffs) his original plea, which was a plea in abatement, and filed a plea denying the material allegations of the petition, and setting up, that if any deed to him to the land described was ever attempted to be executed by J. M. Thompson, the grantor failed in his purpose; that if any such deed was executed as alleged, it was only a deed upon a condition precedent; that it required acceptance by de-

fendant and a performance of certain conditions precedent before any estate vested in him or in the widow; that he has never accepted the deed and now refuses to accept it or to perform its conditions, or to pay any sums to plaintiffs; that they have no right to have any sum declared a lien on the land and to have it sold to satisfy the same; that the deed is null and void; that plaintiffs are entitled to the proceeds of only an undivided one eighth interest in the land, while defendant owns the other seven eighths, by purchase from the other heirs at law, in common with plaintiffs.  He prays, that the land be sold by commissioners for the purpose of division (as it cannot be divided in kind), and that the proceeds be divided in the proportions before indicated.

To this plea the plaintiffs demurred on the ground, that the relief prayed for was not germane to the case brought by them or to the subject-matter thereof.  The demurrer was overruled.

When plaintiffs offered the deed in evidence, they offered the testimony of the subscribing witnesses thereto.  From this testimony it appears, that neither R. A. Thompson nor any one representing him was present when the deed was executed.  J. M. Thompson kept it.  It was handed back to him with other deeds executed at the same time. About the time he executed it he divided up some land among his other children, but gave none to the plaintiffs, so far as the witnesses knew.  The land conveyed by this deed was worth about $800.  The grantor stated to the witnesses, that the deed only required R. A. Thompson to pay the money when he got possession of the land, that he was to have the land after the death of the grantor and the death or marriage of the widow, provided he then paid plaintiffs $50 each, but was not to pay until he got possession.  The court ruled out the deed, presumably for want of proof of delivery.  Plaintiffs insisted that it should be admitted because it had been recognized by defendant's

pleas; and requested a charge to the jury, that it was not necessary for them to introduce the deed and prove its execution, if it appeared that R. A. Thompson had admitted in his pleas the existence and execution of such a deed; and after the withdrawal of the plea in abatement as before mentioned, they offered the plea in evidence, though it does not come to the Supreme Court as a part of the evidence.

R. A. Thompson testified, that the deed offered in evidence was never delivered to him, and he never accepted it or agreed to accept it; that he made no contract with his father about this land or the deed, and knew nothing about it; that his father never gave him anything, and left no money in his hands or anything else; and that the land could not fairly be divided by metes and bounds, on account of improvements and other circumstances, but would be worth more sold as an entirety. He introduced deeds to himself from the other six living children of J. M. Thompson, dated in January, 1895, conveying their interests in the land in question, for "one dollar and other good and valuable considerations," without warranty of title.

The court charged the jury, that if they believed from the evidence that plaintiffs owned one eighth and R. A. Thompson seven eighths of the premises in dispute, and that the land could not be divided equitably in kind and such division in kind would depreciate its value, they should find a verdict that the property be sold and the proceeds be divided one eighth to plaintiffs and seven eighths to defendant. Such verdict was returned, and decree was entered accordingly, appointing commissioners for sale, etc. Plaintiffs moved in arrest of judgment, on the grounds, that the same was contrary to law and evidence, and that under the case as brought, no such judgment could legally be rendered. To the overruling of this motion, and to the other rulings before noted, they excepted.

*Perry & Craig*, for plaintiffs.
*H. H. Dean* and *J. B. Estes*, for defendants.

SIMMONS, Chief Justice.

The facts, so far as material to an understanding of the case, are set out in the reporter's statement.

1, 2. It appears that when the grandchildren of Thompson filed their suit against R. A. Thompson, he filed what is called in the record a plea in abatement. Subsequently, by permission of the court, he withdrew this plea and filed others. One of the questions at issue on the trial of the case appears to have been whether the deed from the elder Thompson had ever been delivered to R. A. Thompson, his son. The plaintiffs put in evidence the plea in abatement, for the purpose of showing an admission therein by R. A. Thompson that the deed had been executed. The subscribing witnesses to the deed were called, and testified that the grantor signed it in their presence and that they signed it in his presence, but that neither the grantee nor any one representing him was present when the deed was signed, and that the grantor kept the deed in his possession. Upon this state of facts the court ruled out the deed, on the ground that no delivery and acceptance on the part of the grantee had been shown; and to this ruling the plaintiffs excepted.

It was claimed before us by counsel for the plaintiffs in error, that the plea in abatement was changed after it had been filed and withdrawn, that the original plea stated that the grantor had "executed" the deed in question, instead of that he had "attempted to execute" it, as appears in the copy contained in the record sent to this court; and an application was made to us to order the clerk of the superior court to send a certified copy of the original plea in lieu of the one which he had sent. It is doubtful whether the plea is rightly before this court at all, and more doubtful whether this court can take cognizance of the alleged alteration; but be this as it may, the plaintiffs in error, in the view we take of the case, would have no right to reverse the judgment even if they accomplished all they set out to

do by suggesting a diminution of the record. Treating the plea as stating that the grantor "executed" the deed, and construing this language in the light of the whole plea, we do not think it amounted to an admission that the grantor delivered the deed to the grantee, and that the latter accepted it. Technically the word "executed," when used with reference to a conveyance, comprehends not only signing and sealing, but delivery. (Anderson's Law Dic., "Execute"; 7 Am. & Eng. Enc. of Law, p. 117, note.) In a popular sense, however, it means signing and sealing (*Id.*); and it is in this sense that we think the admission in the plea was made, because it avers in the latter part thereof that the deed had never been accepted by the grantee; and if it had never been accepted, it could not have been delivered, for .acceptance is a part of the delivery of a deed. (See *Beardsley* v. *Hilson*, 94 *Ga.* 50, 53.) We think, therefore, that the plea should not be treated as a conclusive admission by the defendant that the deed had been actually delivered to and accepted by him, nor as rendering him liable to comply with conditions inserted therein for the benefit of other persons. There being no evidence of delivery and acceptance, the court properly ruled out the deed; and in so far as the case made by the plaintiffs' petition rested upon the validity of the deed, they had no right to relief.

3. By an amendment to their petition the plaintiffs prayed, that if it should appear that R. A. Thompson had not accepted the deed, he be required either to accept or reject it; they alleged that they were entitled to one eighth of the estate of J. M. Thompson, but had received nothing, while each of the other distributees received during his lifetime more than $200; that they (the plaintiffs) were entitled to be made even out of this land, the remaining property of their grandfather, before the other heirs should receive anything; and they prayed that, in the event the land should be sold, they be paid $200 with interest from

the death of J. M. Thompson, in preference to the claim of the other heirs. R. A. Thompson answered and admitted that the plaintiffs were entitled to a one eighth undivided interest in the land, but alleged that by deeds from the other heirs he then owned seven eighths undivided interest therein, and he prayed that the land be sold, because it could not be divided in kind, and that the proceeds be divided in the proportion indicated. The plaintiffs demurred to this part of the answer, on the ground that the relief prayed was not germane to the case brought by them. The demurrer was overruled, and the plaintiffs excepted. The plaintiffs, in the amendment to their petition, having claimed an interest in the land and prayed for its sale, we think the defendant's answer in the nature of a cross-action, praying for a partition by sale, was germane. Upon the facts in evidence, the verdict was right; and the motion in arrest of judgment was properly overruled.

*Judgment affirmed.*