BEARDSLEY *et al. v.* HILSON, and *vice versa.*

1. Where, under the evidence, the real issue as to the alleged delivery of a deed was whether the party to whom it was sent by the maker, and who shortly afterwards returned it declaring it unsatisfactory, had ever accepted it, a charge in the following words was erroneous and misleading: "A deed is delivered in the sense of the law when the person who makes it puts it in the possession of the person to whom it is made, with the intention that it shall pass the title to such person. After such a delivery, the mere return of the deed by the holder thereof to the maker would in no wise affect the condition of the title; the title after such return would stand just where it did before the return." And it was also error to refuse to charge as follows: "If the plaintiff never accepted delivery of this deed, but it was brought to her by a person other than the grantor, and she immediately repudiated the deed and brought it back to the grantor, saying she would not have it, there would be, in law, no delivery of the deed and it would not be effectual to pass the title to the plaintiff. Delivery to be effectual must be accepted as such."

2. Under section 2914(a) of the code, a defendant in an equity case who was duly served with a copy of the bill, or acknowledged service of it, will, after the lapse of three years from the rendition of a decree in such case, be barred from instituting proceedings to set it aside. Such defendant was bound to know when the decree was rendered, and to take, within the time prescribed by law, the proper steps to set it aside, if cause for so doing existed. A defendant not served, or who did not acknowledge service, or appear and defend, is in no way affected by the decree. In the present case the evidence was not sufficient to support a finding that the plaintiff did not acknowledge service of the bill in question. It required clear and explicit proof, to show that she had not been served.

3. The decree showing on its face that the counsel for the plaintiff in the case in which the decree was rendered claimed to have the consent of a defendant in that case to the terms of the decree, this was sufficient to put that defendant on notice that such consent was asserted of record, and require her to move within three years to set the decree aside.

4. A decree purporting to be rendered by consent of parties is not void upon its face because it declares the title to the premises in controversy to be in a person other than one of the parties to the record, it appearing from the record, taken in connection with extrinsic evidence, that this person was a purchaser *pendente lite* from one of these parties. Because of his purchase *pendente lite*, such person is bound by the decree, and consequently entitled to take the benefit of it; and his vendee of the premises, being his privy in estate, is likewise bound and protected by the decree.

5. Where, prior to the adoption of the constitution of 1868, an appeal in an action upon a promissory note was entered by consent from the county court to the superior court, a judgment rendered by the superior court without the intervention of a jury, after the adoption of that constitution, was not void, no issuable defence having been filed, and consequently there being nothing presented for a jury to try, and the judgment being for principal, interest and costs only. In *Walker* v. *Bivins*, 57 *Ga.* 322, and *Birdsong* v. *Woodward, Ibid.* 354, the rights of securites on appeal were involved. In *Seibels* v. *Hodges*, 65 *Ga.* 245, it does not appear from the report that the appeal was entered by consent, and therefore without giving security, as was done in the present case.

6. The property levied upon being described in these words: "A lot and the improvements on the same (as said lot is now inclosed) on Houston street in the 4th ward of the city of Atlanta, containing a half acre more or less, adjoining the property of Francis, Haslett and Jones, it being part of land lot No. 51 in the 14th district of originally Henry, now Fulton county, Georgia, levied on as the property of Robert Yancey," the description was *prima*

*facie* sufficient, although the premises adjoined only one of the persons named, and did not adjoin the other two. And the extrinsic evidence did not raise such a latent ambiguity or disclose such a want of accuracy as would render the description too uncertain to uphold a sale made by the sheriff under the levy. As there was no mistake in setting forth the number of the land lot of which the premises were a part, it was error for the court in its charge to the jury to refer to any mistake in that regard.

June 18, 1894. Argued at the last term.

Equitable petition. Before Judge MARSHALL J. CLARKE. Fulton superior court. September term, 1892.

R. R. ARNOLD, for Beardsley *et al.*

HALL & HAMMOND, *contra.*

SIMMONS, Justice.

A deed by Arnold conveying to the plaintiff the premises in dispute was attacked by the defendants on the ground that the plaintiff had refused to accept the deed, Arnold testifying that a day or two after it was executed and handed to the plaintiff's husband to be delivered to her, she returned it to him (Arnold) saying it was " no account," and left it in his office, and it had remained in his possession ever since, until produced at the trial in response to notice. On this subject the defendants requested the court to charge the jury as follows : " If the plaintiff never accepted delivery of this deed, but it was brought to her by a person other than the grantor, and she immediately repudiated the deed and brought it back to the grantor, saying she would not have it, there would be, in law, no delivery of the deed, and it would not be effectual to pass title to the plaintiff. Delivery to be effectual must be accepted as such." The court refused to charge as requested, but charged that " a deed is delivered in the sense of the law when the person who makes it puts it in the possession of the person to whom it is made, with the intention that it shall pass the title to such person. After such a delivery, the mere return of the deed by the

holder thereof to the maker would in no wise affect the condition of the title; the title after such return would stand just where it did before the return."

We think the court erred in refusing to charge as requested, and in charging as he did on this subject. Delivery of a deed consists of more than the mere handing of the deed to the grantee. In order to constitute a complete delivery, there must be acceptance by the grantee. Where a grantee retains a deed without objection, acceptance will be inferred. It is a presumption of law that a party accepts whatever is for his benefit; but this presumption may be rebutted. Certainly it cannot be the law that the mere handing to a person of a deed which he forthwith returns and declines to accept, invests him nevertheless with the title which the maker of the deed seeks thereby to convey. If a deed conveying merely a life-estate should be sent to the vendee of a fee simple title, and he should return it and decline to accept anything less than the title bargained for, it certainly could not be contended that the mere placing of the deed in his possession would invest him with a life-estate notwithstanding his refusal to accept; yet this would be so if the rule laid down by the court below in this case is correct. It is true the learned judge who delivered the opinion in the case of *Ross* v. *Campbell*, 73 *Ga.* 309, said that "our law does not make acceptance, as well as delivery, an essential requisite of a deed to pass title to land," and cited section 2690 of the code, which declares: "A deed to lands in this State must be in writing, signed by the maker, attested by at least two witnesses, and delivered to the purchaser, or some one for him, and be made on a valuable or good consideration." In that case, however, it was not necessary to say this in order to sustain the decision, inasmuch as it was held that the facts and circumstances showed that the grantee did accept the deed in question. Besides,

although the section cited does not say in so many words that the deed must be accepted, we think this is to be implied from the requirement that the deed shall be delivered; for without acceptance, as we have already said, there cannot be a complete delivery so as to pass title. To this effect, see: 1 Devlin on Deeds, §285 *et seq.*; 5 Am. & Eng. Enc. of Law, Deeds, pp. 445, 446, 449.

2. This suit was brought August 15th, 1887, to set aside a decree rendered April 1st, 1884. On the bill against the plaintiff, upon which the decree was rendered, there was an acknowledgment of service purporting to be signed by her; and in the present suit she seeks to avoid the decree on the ground that she did not sign the acknowledgment of service nor authorize any one else to do so for her. On this subject the testimony was conflicting. The code, §2914(a), declares that " all proceedings of every kind in any court of this State, to set aside judgments or decrees of the courts, must be made within three years from the rendering of said judgments or decrees." If this plaintiff was served with a copy of the bill or acknowledged service, she was bound to know when the decree was rendered, and under this section of the code, would be barred from instituting proceedings to set the decree aside, more than three years having elapsed from the rendition of the decree to the filing of her suit to set it aside. Of course, if she was not served or did not acknowledge service or appear and defend, the decree is not binding upon her. Where, however, an acknowledgment of service purporting to have been made by the defendant appears on the record, and several years have elapsed from the rendition of the decree, and other persons have acted upon the faith of it and acquired property rights under it, we think the testimony to set aside the decree on the ground that there was no service or acknowledgment of service, should be clear and positive. Although the

plaintiff in this case stated positively in the beginning of her testimony that she did not acknowledge service on the bill, she admitted on cross-examination that she was not certain and did not remember about signing the acknowledgment, that her memory was not very good, that she " did not know," and that she was "cripple-minded and thick-headed." It would be a dangerous precedent to set aside the solemn judgment of a court, after a long lapse of time, upon testimony so vague and uncertain as this. We all know that human memory is frail and uncertain, and my own experience convinces me of this more and more every day. Judgments and decrees are solemn adjudications upon the rights of parties interested therein, and if courts were to set them aside years after they have been pronounced, upon such testimony as that of the plaintiff in this case, the public could no longer rely upon them as binding, and no investments upon the faith of them could be regarded as safe. We do not think the evidence in this case was sufficient to support a finding of the jury that the plaintiff did not acknowledge service of the bill in question; and we do not hesitate to say this although another jury upon a former trial may have found the same way.

3. The decree sought to be set aside purported to have been made pursuant to the consent of counsel for the plaintiffs and defendants in the case, the consent referred to being in writing and attached to the decree. The counsel who filed the bill on which the decree was founded, signed this consent as follows : "J. B. Redwine, for complainants and Naomi Webster for whom I was attorney in final settlement, and who consents to the settlement." This was sufficient, if Naomi Webster acknowledged service on the bill, to put her on notice that such consent was asserted of record, and require her to move within three years to set the decree aside.

4. It appears from the record that a settlement was agreed upon by the parties some time prior to the taking of the decree, and E. P. Black having, under this settlement, become a purchaser of the property in question, the parties consented that the decree should vest the title to the property in Black. This being so, the decree is not void because it declares the title to be in a person other than one of the parties to the record. Having purchased pending the litigation, he was bound by the decree, and consequently was entitled to take the benefit of it ; and when he sold the premises to other persons, they were his privies in estate and were likewise bound and protected by the decree.

5. The defendants relied upon a sheriff's deed as a part of their title. This deed was made by virtue of a sale under an execution founded upon a judgment against Webster. The judgment was rendered in a suit brought in the county court of Fulton county in 1867, and appealed by consent of parties to the superior court. Before the trial of the case in the latter court, the constitution of 1868 was adopted and ratified. That constitution provided that " the court shall render judgment without the verdict of a jury in all civil cases founded on contract, where an issuable defence is not filed on oath." The suit being upon an unconditional contract in writing and there being no issuable defence filed on oath, the judge entered up judgment, under this provision of the constitution. When the sheriff's deed and the judgment and execution above referred to were offered in evidence in the present case, counsel for the plaintiff objected on the ground that the judgment under which the sheriff sold was void, because the case, being appealed from the county court to the superior court before the ratification of the constitution of 1868, should have been tried by a jury and judgment entered on the verdict of a jury. In support of this contention counsel

for the plaintiff relied upon the cases of *Walker* v. *Bivins,* 57 *Ga.* 322, and *Birdsong* v. *Woodward, Id.* 354. In these cases, however, it will be seen that the rights of sureties were involved. The defendants therein appealed and gave bond and security for the eventual condemnation money, and it was held by this court that the sureties had a right to trial by a jury to ascertain what the condemnation money was, and that the judge had no power or authority in such a case to render judgment without the verdict of a jury. These cases are commented upon in the case of *Redd* v. *Davis,* 59 *Ga.* 825. In the case of *Seibels* v. *Hodges,* 65 *Ga.* 245, the report of the case, as published in the book, is silent as to whether sureties were involved or not, but after a careful reading of the record in the clerk's office, I am inclined to think the appeal was made in the same way in which it was made in the other cases above referred to; at any rate the record does not show that the appeal was made by consent. In the present case, as before remarked, the appeal was made by consent; no appeal bond was given and no rights of sureties were involved, and the judgment was merely for principal, interest and costs; this case, therefore, is not controlled by the cases relied upon by counsel for the plaintiff in error. In the case of *Redd* v. *Davis, supra,* it was held that where the constitution of 1868 abolished the county court and transferred the cases pending therein to the superior court, it was competent for the latter court to render judgment without a jury where there was no issuable defence. If this could be done where the cases were transferred by law, we see no reason why it could not be done where they were transferred by consent of the parties, from the same court before it was abolished. We think the court below in this case was right in holding that the judgment was not void.

6. We deem it unnecessary to add anything to what

is said in the 6th head-note as to the sufficiency of the levy, as the head-note seems to be full enough on that point.

*Judgment on the main bill of exceptions, reversed; on the cross-bill, affirmed.*