2618, 2619.  McLIN *v.* HARVEY, and *vice versa.*

1. As a general rule, one surety can not recover contribution from another when the debt paid by the surety seeking contribution was not binding either on the principal or on the other surety.

2. A partial payment on a promissory note, either by the principal maker or by a surety, before the note is barred by the statute, does not constitute a new point for the running of the statute of limitations as against a cosurety who is not a party to the payment.

3. The right of contribution does not rest on the original contract, but arises out of the relation, created thereby, of a common obligation, and the contract implied therefrom of discharging the common obligation equally, and when one surety or indorser on a promissory note is, by operation of law, discharged from the obligation of payment, the obligation thus discharged can not, without his consent, be revived against him by the voluntary act of a cosurety.

DECIDED OCTOBER 14, 1910.

Complaint; from city court of Floyd county—Judge Hamilton. April 4, 1910.

*Lipscomb, Willingham & Doyal,* for McLin.

*Dean & Dean,* contra.

HILL, C. J.  Harvey sued McLin for contribution as cosurety on promissory notes.  The petition alleges that the Rome Cotton Factory, a corporation, gave to W. N. Moore, as guardian, the notes, which are fully set out.  Each of these notes, besides being signed by the Rome Cotton Factory by Henry Harvey as its president, as the principal maker, was at the same time and before its delivery signed by the plaintiff, the defendant, and several others, who were then directors of the Rome Cotton Factory, as sureties. Upon each of these notes various payments were made from time to time, the payments appearing by credits dated and entered on the back of each note.  Some of these entries of credits were unsigned, and some purported to be signed by the Rome Cotton Factory, Henry Harvey, president and treasurer.  It is alleged that the credits which purported to be signed by Henry Harvey, president and treasurer, were in fact made and signed by the plaintiff, and on the days of their several dates; and besides the sums thus credited, nothing has been paid on these notes except a payment by the trustee in bankruptcy of the Rome Cotton Factory.  In the year 1903 the Rome Cotton Factory was adjudicated a bankrupt.  It is also alleged that all the indorsers and sureties on the notes are insolvent, except the plaintiff, the defendant, and

one other named surety. The plaintiff alleges that he paid to the then holders of the notes one half of the amount due thereon, and he sues to recover from the defendant the aliquot proportion which defendant as cosurety was liable to pay on the notes in question. The payments credited on the backs of the notes show by their dates that they were entered before the notes had become barred by the statute of limitations. A demurrer to the petition was overruled, and this is the error assigned in the main bill of exceptions. A cross-bill was filed by the plaintiff, assigning error in the judgment overruling his demurrer to the defendant's answer.

The demurrer to the petition makes the contention that the notes were all barred by the statute of limitations at the time the plaintiff claims to have made the payments; that the payments were entirely voluntary, and were not binding upon his cosureties; that the entries of payments made on the notes were not sufficient to extend the period of limitations as to any of the parties to the notes, but that in any event the entries of payment could only extend the period of limitations as to the Rome Cotton Factory, and that even if the plaintiff made these entries individually, the entries should be construed to have extended the period of limitations only as to himself, and that these entries at most only constituted new promises binding on him alone, and not affecting his cosurety, who was no party to them; in other words, that all the notes were barred by the statute of limitations, unless the statute was extended by the entries on the notes, and that even if the statute of limitations was extended by these entries, it was only extended in so far as parties who made the entries were concerned, and did not affect the rights of a cosurety who was no party to them. It is conceded by counsel for the defendant that when the plaintiff paid the balance due on the notes, they were barred by the statute of limitations, unless the period of limitations was extended by the entries in writing on the notes. The controlling question, therefore, for this court is as to the legal effect of these entries of payment on the back of the notes. Did they prevent the bar of the statute of limitations from attaching, or did they constitute a new point of time for the running of the statute? Did they keep the notes alive as binding obligations against all the parties thereto, or only as binding obligations against the parties who made the entries?

It is insisted by counsel for the defendant that although a co-promisor may, by operation of law,—such as a discharge by the statute of limitations,—be released as a creditor, yet if the remaining obligor is bound and pays the debt, he may recover by contribution from the one against whom the creditor is barred. The question thus raised has been variously determined by the courts both of England and of this country. Three distinct and irreconcilable theories relating to the power of one joint maker or joint obligor to deprive the other of the defense of the statute of limitations have been announced. The first of these theories is that such a power exists. The courts announcing this doctrine have followed the ruling of the great Chief Justice Mansfield· in Whitcomb *v.* Whiting, 2 Douglas, 652. In that case it was held that in an action on a joint and several note, brought against one of the makers, proof of payment by one of the others of interest on the note and of part of the principal within six years took the case out of the statute, as against the defendant who was sued. The entire decision of Lord Mansfield on the subject is as follows: "Payment by one is payment for all, the one acting, virtually, as agent for the rest; and, in the same manner, an admission by one is an admission by all; and ·the law raises the promise to pay, when the debt is admitted to be due." The proposition thus tersely stated by the great jurist has been held in many jurisdictions to be true, not only as to joint obligations such as promissory notes, but also as to the relative rights of partners. This. opinion of Lord Mansfield has not met with universal approval, and many of the jurists of this country have not hesitated to discredit it as unsound. Mr. Justice Story, in Bell *v.* Morrison, 1 Peters, 351 (7 L. ed. 174), reviews the decision at some length, declaring that the reasoning of Lord Mansfield on the point was not very satisfactory. "It assumes that one party who has authority to discharge has, necessarily, also authority to charge the others·; that a virtual agency exists in each joint debtor to pay for the whole; and that a virtual agency exists, by analogy, to charge the whole. Now, this very position constitutes the matter in controversy. It is true that a payment by one does enure for the benefit of the whole; but this arises not so much from any virtual agency for the whole as by operation of law; for the payment extinguishes the debt. If such payment were made after a positive refusal or prohibition of the

other joint debtors, it would still operate as an extinguishment of the debt, and the creditor could no longer sue them. In truth, he who pays a joint debt pays to discharge himself; and so far from binding the others conclusively by his act, as virtually theirs also, he can not recover over against them, in contribution, without such payment has been rightfully made, and ought to charge them." Judge Lamar, in the case of *Brewster* v. *Hardeman,* 1 *Dud. Ga. Dec.* 138, where there is an elaborate and able discussion of the question now under consideration, declared that the fact that the doctrine announced in the case of Whitcomb v. Whiting had not been overruled in England was perhaps "owing more to the profound deference which is paid to the high character of Lord Mansfield as a jurist than from any thorough conviction of the soundness of the doctrine itself. It seems to be the prerogative of a lofty mind not only to enlighten by its wisdom, but to enslave by its authority."

The second theory enumerated on this subject by some of the judges of England subsequently to the decision of Lord Mansfield above referred to, and by many of the courts of this country, is that one joint maker of a note has no power to deprive another joint maker of the defense of the statute of limitations. This second theory is ably supported by the exhaustive opinion of Mr. Justice Story in the case of Bell v. Morrison, supra. Among the many opinions in harmony with that of Mr. Justice Story is that of Mr. Justice Bronson in Van Keuren v. Parmelee (N. Y. Court of Appeals), 2 Comstock, 528 (51 Am. Dec. 322), wherein is found an elaborate review of all the authorities on the question and a vigorous denial of the soundness of the doctrine announced in Whitcomb v. Whiting. The cases of Bell v. Morrison and Van Keuren v. Parmelee relate to the rights of a partner to bind after the dissolution of the partnership, and after the statute of limitations has attached to the partnership debts. But the opinions in both cases consider the cognate subject of the relative rights of all co-contractors, co-obligors, and joint makers. In both these cases it was held, that the acknowledgment of the debt by one partner, after dissolution of the copartnership, is not sufficient to take the case out of the statute as to other partners; and that after the dissolution of the partnership, no partner can create a cause of action against the other partner, except by new authority communicated to him for that purpose.

The third theory announced is that there does exist such a power, but that it ends when the legal term prescribed by the statute of limitations has elapsed. This latter doctrine is based on the ground that the community of interest which alone makes the admission of one debtor binding on another ceases whenever the statute of limitations takes effect, and leaves both in the position of mere strangers, not answerable for each other's words or acts. In other words, after the statute has barred a debt, the persons who were the debtors are no longer jointly concerned; or, as Judge Lamar expresses it in the case of *Brewster* v. *Hardeman,* "Time has severed the ligament that bound them together as joint debtors, and it can not be reunited but by the consent of all." As illustrating the diversity of views of distinguished jurists on this question, it is interesting to note that Judge Lamar, in *Brewster* v. *Hardeman,* supra, held that "upon precedent and authority" the admission of a debt by one partner after dissolution, but previous to the action of the statute, would be binding upon the other partners so far as to constitute a new point from which the statute would commence to run; and the learned judge in the case of Van Keuren v. Parmelee, supra, declared that part payment by one of several joint makers before the statute has barred an action on a note will not take the case out of the statute as to the other makers. And in this connection it is also interesting to note that the decision of Lord Mansfield in Whitcomb v. Whiting was in direct conflict with the decision of an English jurist rendered ninety years previously in Bland v. Haslerig, 2 Ventris, 151. This last case was in assumpsit against four upon a joint promise, and the statute of limitations was pleaded, and the verdict was that one of the defendants promised within six years, but the others did not. Upon this verdict judgment was rendered for the defendant. But we will not extend further the discussion of the various theories announced on this subject by the courts of this country and England. Those who may be interested will find the cases on all the theories collated in the notes to Whitcomb v. Whiting, supra, in 1 Smith's Leading Cases, Part 2, *642. See also Angell on Limitations (6th ed.), 269.

Coming to our own State we are clear that the policy of the law as declared by the legislature and decided by the Supreme Court

is to deny the right of one co-obligor or copromisor to hold the other joint obligor after the bar of the statute of limitations has attached. The very able and learned counsel for the plaintiff in error seems to think that the whole question is really controlled by the statutes of this State; and he is probably correct in this view. But it may be interesting to review the decisions of the Supreme Court on the subject in connection with the statutory law. The first case is that of *Brewster* v. *Hardeman,* supra. In this case Judge Lamar says that with the exception of the old case of Bland *v.* Haslerig, and a decision from Pennsylvania, and the case of Bell *v.* Morrison, supra, the authorities of England and America, so far as they have fallen within his notice, "uniformly recognize the doctrine that an admission of a debt by one partner after the dissolution of the partnership will take the debt out of the statute as to all the partners," but that this would not be so if the acknowledgment of the partnership debt was made after the debt had been barred by the statute of limitations; in other words, that the admission of a debt by one partner after dissolution, but previous to the action of the statute, would be binding upon the other partners so far as to constitute a new point from which the statute would commence to run, but if the debt was actually barred, any new promise by one partner could not revive the debt against a former partner. Of course, the question here decided by the learned jurist is now settled to the contrary by our code (Civil Code of 1895, §§ 3791, 3792), in which it is declared that after the dissolution of a partnership, a new promise by one partner revives or extends the partnership debt only as to himself, and not as to his copartners, and that a new promise of one of several joint, or joint and several, contractors operates only against the one who makes the promise.

In the present case it is said that the entries of credits on the notes were sufficient to keep the obligation alive not only as to the parties entering the credits, but as to all the co-obligors or cosureties. Some question was made in the argument as to the form of these entries of credit, it being insisted by counsel for the plaintiff in error that the entries were not sufficient written acknowledgments to constitute a new promise to pay. It is not clear from the allegations of the petition and the entries on the notes whether these entries of credit were made by the maker of the notes, the

Rome Cotton Factory, by its president and treasurer, Henry Harvey, or whether they were made by Henry Harvey individually, as one of the cosureties on the notes. In the view that we take of the case it is unnecessary to decide this point, for it is apparent that the entries of these credits were in fact made by one of the debtors on the notes, whether that debtor was the maker of the note or a surety thereon; and in so far as the debtor who actually made the entries is concerned, they are equivalent to a new promise to pay. Civil Code of 1895, § 3789. Some of these entries were made on the notes before the statute of limitations had operated as a bar. In *Cox* v. *Bailey,* 9 *Ga.* 467 (54 Am. Dec. 358), it was held that where one of four joint and several promisors promised to pay the debt before the statute of limitations had operated as a bar, it took the case out of the statute as to the others; and in the case of *Tillinghast* v. *Nourse,* 14 *Ga.* 641, it was held that "a payment by one of two or more joint contractors, within the statute and before its bar has attached, constitutes a new starting point for the statute." In the *Tillinghast* case the Judge who wrote the decision doubted the soundness of the decision in *Cox* v. *Bailey,* supra, declaring that the correctness of the principle that an admission by one joint contractor or partner binds the other had been frequently doubted and sometimes denied, but as the doctrine had been considered the settled law of the State for a quarter of a century at least, it should be, for this reason, if for no other, adhered to until changed by the legislature. The two cases above cited from our own Supreme Court relate to the relative rights of partners and of joint and several promisors, or joint contractors. In a later case (*Hunter* v. *Robertson,* 30 *Ga.* 479) the Supreme Court expressly refuses to extend the doctrine announced in these two cases to that of the relative rights of cosureties, holding that the former adjudications were applicable to joint contractors, obligors, or partners, because of a community of interest between them, but that this was not true as to indorsers and cosureties; that the contract of an indorser was a new and independent one from that of the maker, and that there was no community of interest between the two, and that the indorser or surety was only bound to the extent of his contract; that as to a joint obligor, his liability continues until the debt is paid, and if there is a change in the contract, he is supposed to have consented to it because of his com-

mon interest in it. The security or indorser, on the other hand, stands on his contract as such, and any modification of it, whether to his interest or against it, works his complete discharge, unless he agrees to it; and an indorser or surety can not be affected by any new promise to which he was not a party and did not assent. It was therefore held in the *Hunter* case, supra, that "a payment by the principal or maker of a promissory note, *before* barred by the statute, does not constitute a new point for the running of the statute of limitations as against the indorser or surety, unless such indorser or surety be a party to such payment." As before stated, · sections 3791 and 3792 of the Civil Code of 1895, which are codified from the act of 1856 (Acts 1855-6, pp. 236, 237), supersede the law as laid down in the cases of *Cox* v. *Bailey* and *Tillinghast* v. *Nourse*, supra. It would seem that the case of *Hunter* v. *Robertson*, supra, governs the question now under discussion. Indeed, the headnote of that case which we have quoted could be aptly applied to the present case. Even admitting that the credits made on the notes were in proper form and constituted new promises, and that the dates of the payments shown by such credits made new points for the beginning of the statute of limitations, under the decision just referred to they would only be binding upon the maker or the cosurety who made the payments and the entries of credit; for it is not contended that the other surety, the defendant in the present case, as such surety or indorser was a party to any of the credits or payments. In *Dean* v. *Munroe*, 32 *Ga*. 28, it was held that "A new promise made by the maker of a promissory note is not sufficient to take it out of the operation of the statute of limitations as against the indorser." And in *McBride* v. *Hunter*, 64 *Ga*. 656, it was held that a payment by the maker of a promissory note did not revive or extend the note as against the surety; citing *Hunter* v. *Robertson* and *Dean* v. *Munroe*, supra. In *Rogers* v. *Burr*, 105 *Ga*. 447 (31 S. E. 438, 70 Am. St. R. 50), the decision in *Hunter* v. *Robertson* is fully and strongly reaffirmed. Whether the credits on the notes in this case were made by the principal or the maker thereof, or by the present plaintiff as surety, we think it follows, from all of these decisions, that these· payments or credits did not extend or revive the original liability, did not create new promises that were binding upon any of the other sureties who were not parties to such payments, and did not

constitute new points for the running of the statute of limitations, in so far as the rights of other sureties not parties to such payments were concerned. This principle, we think, falls within the spirit, if not the letter, of section 2975 of the Civil Code: "The creditor must pursue his remedy against the surety within the time prescribed by law, and no payment or promise by the principal, or by a cosurety, can extend the obligation of the surety or the remedy of the creditor against him." A contract of suretyship, being one of strict law, can not be extended except by the act or conduct of the surety himself. One surety can not extend the time of payment of a promissory note as against his cosurety, or revive a note already barred by the statute of limitations, by any new promise, without the consent of the cosurety. Neither debtor has the right to bind the other beyond the obligation of the original contract, and when that obligation is terminated by operation of law and the surety has been thereby discharged, as to the surety so discharged no new obligation can be created, except by his own act. As a general rule one surety can not recover contribution from another when the debt paid by the surety seeking contribution was either not binding on the principal or not binding on the other surety. 1 Brandt on Suretyship, § 293. The right of contribution does not rest on the original contract, but arises out of the relation created thereby, of a common obligation, and the contract implied therefrom of discharging the common obligation equally; and when one surety or indorser on a promissory note is, by operation of law, discharged from the obligation of payment, the obligation thus discharged can not be revived against him without his consent, by the voluntary act of a cosurety. It is admitted in this case that the original debt represented by the notes was barred by the statute of limitations, unless the statute was extended by the entries of payments made on the notes, either by the principal debtor, or by the plaintiff as surety; and it being, we think, clearly established by the authorities above cited that these credits of payments could only extend the running of the statute of limitations as to the rights of those making the payments or entries, and would constitute new promises only as to those who made the new promises, and could not affect the right of any surety who had nothing to do with the making of the payments or the new promises, it follows that no right of contribution was shown to exist, and

that the plaintiff alone was bound by the voluntary extension of his liability in, making the payments on the notes, and that therefore the judgment of the court below in overruling the demurrer was erroneous. *Judgment on the main bill of exceptions reversed; cross-bill of exceptions dismissed.*

POWELL, J., concurring. I think the case is controlled by the spirit, rather than by the express letter of § 3792 of the Civil Code of 1895, which provides that, "In cases of joint or joint and several contracts, a new promise by one of the contractors operates only as against himself." Cognate sections of the code, as well as of the original statute from which this section is codified, indicate that reference is directly had only to the liability of the promisors to the promisee, and not to the liabilities existing between or among the promisors themselves. The liability of an obligor may be barred or extinguished as against any action which the promisee might bring, and yet not barred or extinguished as against an action brought by a co-obligor for contribution. Thus, say that A and B have jointly promised to pay C a sum of money on or before Jan. 1, 1904 (the promise not being under seal, and therefore being subject to the bar of the statute after 6 years), and in December, 1909, while the note is still alive and enforceable, A pays the debt to C. Now it would seem that if the payment had not been made, C could not have successfully sued B thereon, after Jan. 1, 1910. But A, having paid the debt, is not bound by any such limitation. His right of action against B for contribution could not be barred until after the statutory period applicable to his right of action for contribution had expired, from and after the time that right of action arose, namely, 4 years from the time the payment was made. Therefore, A could sue B for contribution at any time up to December, 1913, notwithstanding C's right of action on the note would have been barred by Jan. 1, 1910.

The cause of action in favor of a joint promisor for contribution arises from the fact of his having paid more than his ratable portion of the debt, and from the promise implied against his co-obligors that if he does so, they will ratably reimburse him. The mutual promises of contribution thus implied as between or among the joint promisors, and the cause of action arising thereon when one of them has paid more than his share, are distinct from the

promise contained in the note and the cause of action existing thereon in favor of the promisee.

If the debt becomes barred as to all the promisors and thereafter one of them revives it, and pays it, there appears to be no sound reason why he should call on his former co-obligors for contribution; for while a promise of contribution is to be implied in favor of one joint obligor as against another, still that promise should naturally be limited so as to be construed as an agreement of the one to reimburse the other only in the event the latter is compelled by the creditor to pay more than his ratable portion of the debt, or in the event he pays it at a time when the creditor could compel him to pay it.

As stated above, if one of the joint obligors pays the debt in cash at any time before the debt is barred, he may sue for contribution at any time within 4 years from the date of his making the payment. Now suppose that when the creditor, seeing his debt about to be barred, demands the cash of one of the joint obligors, and the latter says, "I can not pay you in cash, but I will give you my promissory note for the amount," and the creditor, being content with this obligor's solvency, accepts his note in lieu of the cash, and, before this last note is paid, the time within which the original obligation should be sued in order to avoid the bar of the statute expires. What are the rights of the obligor who has thus paid by note instead of in cash, as against his co-obligors? And in looking for a satisfactory answer to this question, I find doubt as to the proper solution of the case at bar.

However, in looking over the sections of the code relating to the new promise implied from the fact of the debtor's entering a credit on the note or other written obligation, we find a section (3790) providing that "a new promise revives or extends the original liability; it does not create a new one." If one of the joint obligors enters a payment on the note, he does not pay off the old indebtedness. He merely revives or extends his original liability to the creditor, but does so subject to the provisions of the other section of the code referred to, namely, that he extends it as an individual liability and not as a liability shared jointly by him and his original co-obligors. I think, therefore, that it is within the spirit of § 3792 of the Civil Code of 1895 to say that if one of the joint obligors thus severs the community of liability, he must per-

fect his right of contribution by paying off the debt before it is barred as against the original joint obligation, else he loses it. Therefore, irrespective of how the question proposed above, where the creditor accepts the note of one of the obligors not as an extension of the original liability, but in extinguishment of that liability, is to be answered, I think that the result announced in the opinion in chief by my esteemed associate is correct; and I have written this concurrence only for the purpose of preventing the particular ruling made herein from being misapplied and given too wide a scope.