### 9956. WATKINS v. WOODBERY et al.

1. Under the rulings made by this court in *Arnold* v. *Water Power & Mining Co.*, 22 *Ga. App.* 504 (96 S. E. 343), and by the Supreme Court in the same case on certiorari, 149 *Ga.* 107 (99 S. E. 382), the motion to dismiss the bill of exceptions in this case is overruled.

2. The first assignment of error in the bill of exceptions, complaining of the admission of certain evidence, upon the ground that it was immaterial and irrelevant, is without merit, since the evidence admitted was relevant to show the history of the transaction involved; but even if immaterial, its admission is not shown to have been harmful. Unless a reasonable likelihood of a prejudicial effect appears, the admission of evidence merely immaterial will not authorize the setting aside of a verdict and the grant of a new trial. *Armour Fertilizer Works* v. *Dwight*, 22 *Ga. App.* 144 (3) (95 S. E. 746).

3. The assignments of error as to the exclusion of certain testimony are without merit. Whether one of the plaintiffs in a suit for contribution may have in point of fact procured from one of the joint makers of the notes, other than the defendant, the amount contributed by him towards the discharge of the joint obligations, by giving to that joint maker his personal note therefor, and whether that note has ever been paid, are matters resting solely between the plaintiff and the one from whom he borrowed the money thus contributed. So far as the defendant here is concerned, the original joint obligations have been discharged, and he is no longer liable thereon; and whether the plaintiff borrowed the amount contributed by him, and, if so, whether it has ever been repaid to the one from whom it was borrowed, are questions with which the defendant has no concern. *Larsen* v. *Slette*, L. R. A. 1915A, 898, and note (125 Minn. 267, 146 N. W. 1094) ; *Hillas* v. *Fuller*, 143 N. Y. Supp. 15; 13 C. J. 823, § 5, note 32 (e) ; *Miller* v. *Perkerson*, 128 *Ga.* 465 (3) (57 S. E. 787). The questions which the court refused to permit the witness to answer were propounded merely for the purpose of showing that the note given by the plaintiff for the money borrowed and con-

tributed by him towards the discharge of the original joint obligations had never been paid, and not that the plaintiff had not actually contributed towards the discharge thereof the amount alleged.

4. The other excluded evidence offered by the defendant, tending to show an indebtedness upon the part of one of the plaintiffs to one of the banks for whose benefit the original joint obligations were incurred, was immaterial to the issues involved under the pleadings, and the court did not err in excluding it.

5. Under the well-settled rule that, in a case where the plaintiff's or the defendant's testimony is contradictory in itself, vague, or equivocal, it must be construed most strongly against him (*Bussey* v. *Grantham*, 23 *Ga. App.* 709 (99 S. E. 236) ), the evidence in this case demanded a verdict in favor of the plaintiffs, and the court did not err in so directing.

DECIDED JULY 17, 1919.

Complaint; from Gilmer superior court—Judge Morris. October 30, 1917.

*A. H. Burtz, D. W. Blair,* for plaintiff in error.

*William Butt, Tye, Peeples & Tye,* contra.

JENKINS, J. -It is only the fifth headnote which is thought to require elaboration. Sam Tate, W. H. Woodbery, and E. W. Butt brought suit against E. W. Watkins, alleging that the plaintiffs, together with the defendant, were joint makers of certain notes; that the plaintiffs, together with all the other makers except Watkins, had paid off the notes while Watkins had paid nothing, and that by reason of these facts Watkins was liable to the plaintiffs in designated sums by way of rembursement and contribution. Watkins admitted signing the notes, but denied liability thereon, alleging that he had never received any consideration; and alleged that he signed the notes at the solicitation of the plaintiffs, and with the understanding then had between him and the plaintiffs that "he was not to be liable" thereon; and that he was a mere accommodation maker or indorser. The present suit proceeded in the names of Woodbery and Butt only, it having been previously disposed of as to the plaintiff Tate. The record shows that four certain banks in north Georgia and one in Tennessee, among them being the North Georgia National Bank of Blue Ridge, Ga., and the Gilmer County Bank of Ellijay, Ga., were, in the fall of 1911, about to fail. The defendant was at the time a director and stockholder of the North Georgia National Bank, president of the Gilmer County Bank, and also a depositor. The plaintiffs and the defendant, together with thirteen other persons, executed two notes, each dated November 1, 1911, one for $75,000

6

and the other for $25,000, for the purpose of raising money to preserve the solvency of these banks. The $100,000 was thus raised, and was used for the benefit of each of the five banks. This $100,000 indebtedness, evidenced by the two notes mentioned above, was renewed from time to time, by the giving of renewal notes, and finally payment was made of the last renewal notes, which were each joint and several notes, and each signed by said sixteen persons, Watkins, the defendant, being one. To the payment of the $100,000 each of the sixteen persons contributed, with the exception of the defendant, who has paid nothing. The contributions made by some of the fifteen. were quite small, three of them being insolvent. Tate paid $35,538.88, Woodbery $25,000, and Butt $11,000. These three were the only persons of the fifteen who paid more than would have been their proportionate share, and they brought suit against Watkins for contribution. No question as to misjoinder of parties plaintiff was raised, and, as already stated, the case had been disposed of as to the plaintiff Tate, and this trial involved only the amounts claimed by Woodbery and Butt, being $1,445.58 and $278.91 respectively. At the close of the testimony the court, upon motion, directed a verdict in favor of the plaintiffs, and the defendant excepted.

That the plaintiffs, if entitled to recover at all, are entitled to the amounts claimed by them respectively is not questioned, the contention of the defendant being that he was merely an accommodation maker or indorser, that he received none of the consideration, and that he was induced to 'sign the notes by the representations of the plaintiffs that he would never have them to pay or be 'called upon to pay them. The fact that the banks for whom the money was borrowed (of one of which the defendant was a stockholder and director, and of another of which he was president and a depositor) received the money thus borrowed is undisputed. The defendant's plea of failure of consideration is therefore not supported by the evidence. Granting, for the sake of the argument only, that the defendant was merely an accommodation maker or indorser, when accommodation parties get for and through another the exact consideration which they contemplate it is the same as if they receive it themselves, and a plea of want of consideration is not good. *Farrar* v. *Bank of New York,* 90 *Ga.* 333 (17 S. E. 87). This leaves only the defense

that the defendant was induced to sign the notes by the representations of the plaintiffs that he would never have the notes to pay.

Were this a suit against the defendant upon the notes themselves by the payees thereof, the defendant having admitted signing the unconditional promissory notes, and the undisputed evidence showing that he received the consideration contemplated at the time he signed them, the plea of the defendant, attempting to set up such a promise on the part of the payees, would constitute no valid defense to the action; for it would amount to nothing more than an effort to vary the terms of the unconditional written promise to pay, by setting up a contemporaneous parol agreement contrary thereto, with no allegation that such an understanding was omitted from the notes by fraud, accident, or mistake. See *Boynton* v. *Twitty*, 53 *Ga.* 214; *Hirsch* v. *Oliver*, 91 *Ga.* 554 (18 S. E. 354); *Byrd* v. *Marietta Fertilizer Co.*, 127 *Ga.* 30 (56 S. E. 86); *Proctor* v. *Royster Guano Co.*, 21 *Ga. App.* 617 (3); (94 S. E. 821); *Rheney* v. *Anderson*, 22 *Ga. App.* 417 (96 S. E. 217). But in a suit for contribution from his co-obligors by one who has paid the joint obligation, the right of contribution does not rest on the original contract, and the note thus paid is not the basis of the action for contribution. The right of action has no strict connection with the promissory notes, but arises out of the relation created thereby on a common obligation, and the contract implied therefrom of discharging the common obligation equally. The co-obligor's right of action for contribution arises at the time he parts with his money in discharging, in whole or in part, the joint liability, and the note may afford evidence of the sum of money advanced by the paying co-obligor, and afford a basis for determining the aliquot portion thereof for which the defendant may be liable by reason of his implied promise to pay. *Sherling* v. *Long*, 122 *Ga.* 797 (50 S. E. 935); *Hall* v. *Harris*, 6 *Ga. App.* 822 (65 S. E. 1086); *McLin* v. *Harvey*, 8 *Ga. App.* 360 (69 S. E. 123). There is no contention or issue made upon the proposition that the plea of the defendant, setting up a parol understanding to the effect that the defendant signed the notes by virtue and by reason of the verbal warranties and assurances of the plaintiffs that no injury or loss would accrue thereon, fails to set forth a good defense to the suit for contribution; and without passing upon this proposition, which is not raised, direction is

given to the case upon the ground that the evidence given in behalf of defendant was insufficient to sustain his plea as made.

As to the plaintiff Butt, there was absolutely no evidence to sustain the plea. As to the plaintiff Woodbery, while the defendant testified that Woodbery said to him, "Now you will never have a cent of it to pay—never even be called on," and, "But for the statement of Mr. Woodbery that I wouldn't be called on to pay these notes, I would not have signed them," and though he further testified, and in the same connection, "What caused me to sign these original two notes for twenty-five and seventy-five thousand dollars each was representations made by *general talk* and representations made by Mr. Woodbery. . . As to inducements held out by Mr. Woodbery that induced me to sign these notes, Mr. Woodbery *was addressing a crowd* in the hall of the banking building and I was very slow about signing, in fact I wasn't signing; he said, 'Now you will never have a cent of it to pay—never even be called on.' There were several in the room, I don't remember just who and when he said that. We had done quite a heap of talking about it heretofore, and it was understood that if we could get enough signers to make one hundred thousand dollars for the purpose of taking care of the situation that we wouldn't have anything to pay, that it was only a matter of accommodation—that the banks would go on and make the interest—keep the interest paid as long as those banks wanted to carry it, and then the banks would pay it; that was the *general talk among the directors* [of whom defendant was one] generally. Then Mr. Woodbery, in order *as I thought* to convince me, says, 'You will never have a cent of that to pay—and will not even be called on to pay,' " he further testified, "I couldn't say just who was present when Mr. Woodbery made these representations to me, but I think a good many of the directors were there. That was my idea, but I wont undertake to say just who. I think Mr. Tate was there, and I know several others. *The talk and general supposition was* that they *thought* they wouldn't have to pay these notes, as I suggested, the way Mr. Woodbery made the statement."

It will thus be seen that, taking the defendant's own testimony, which is vague and equivocal, and construing it most strongly against him, as we must, it is not shown that the statement of Woodbery was a positive assurance or guaranty, but it appears to

have been merely a statement of his opinion, based upon the assumption that the banks themselves would be able to repay the money thus borrowed. It follows, therefore, that unless the money was paid by the banks, the signers of the notes must have known that they would be liable therefor, and must have so understood at the time the notes were signed. Furthermore, all this testimony as to these representations has reference to the time when the defendant signed the two original notes. The defendant does not claim that any such representations were made at the time he signed the renewal notes, the payment of which is the basis of the present suit, but, to the contrary, he testifies, "I signed the renewals just anywhere—most of them up here. After I had signed one I thoroughly understood a renewal was quite necessary, *because I was in for the money anyhow.*" It is thus shown that at the time the defendant signed the renewal notes, no representations were made to him by the plaintiff Woodbery, but, so far as appears from the record, they were signed voluntarily by the defendant. See, in this connection, *McKee* v. *Hurst,* 21 *Ga. App.* 571 (3) (94 S. E. 886). In our opinion the defendant failed to prove his defense as made, and the trial court properly directed a verdict in favor of the plaintiffs.

*Judgment affirmed. Wade, C. J., and Luke, J., concur.*