## 13498. TAFF *et al. v.* LAREY.

1. A note signed on the face by A, B, and C, with nothing to indicate a relation to the note by any of them other than as principals, and indorsed in blank on the back by D, is, in an action upon the note against B, C, and D, by F, the original payee, prima facie the obligation of A, B, and C as principals, and of D as an accommodation indorser or surety, and the suretyship is prima facie for A, B, and C as principals together; and in a contest formed as among the defendants in respect to their relations to each other, in such an action, the burden of proving a different relation from that prima facie existing will be upon the person or persons asserting it. In the instant case B and C sought to show, as against D, that the three of them were cosureties for A. The verdict was adverse to them upon this issue, and they filed a motion for a new trial. The charge excepted to in ground 14 of the motion was in substantial accord with the principles herein announced and was without error. *Camp* v. *Simmons,* 62 *Ga.* 73 (2); *Patillo* v. *Mayer,* 70 *Ga.* 715 (2); *Sibley* v. *American Exchange National Bank,* 97 *Ga.* 126 (4) (25 S. E. 470); *Frye* v. *Sims,* 144 *Ga.* 74 (86 S. E. 249); *Bishop* v. *Georgia National Bank,* 13 *Ga. App.* 38 (2) (78 S. E. 947); Civil Code (1910), §§ 3541, 5796.

2. There being no exceptions pendente lite to the refusal to strike a part of the pleadings of D upon motion of B and C, and the bill of exceptions complaining thereof being tendered too late for any direct assignment of error to be made therein upon such ruling, no question is presented for decision thereon; and such a ruling cannot be properly made a ground of a motion for a new trial. This rule is applicable to grounds 4 and 20 of the motion.

3. Ground 5 complains of the exclusion of evidence which but stated a conclusion; and the evidence excluded by the ruling complained of in ground 9 was hearsay only. There is no merit in either of these grounds.

4. The refusal to allow one of the movants to answer the interrogation of his counsel — "What is your relation to that note?" — was not error. whether the ruling was upon the court's own motion or upon objection of the opposite party. The form of the question would have sought only a conclusion of the witness. Also, it was propounded upon direct examination and the record does not show that the court was informed as to what answer was expected.

5. Ground 7 complains of the prejudicial effect of certain evidence delivered by the opposite party in the presence of the jury. The court promptly repelled the evidence. No motion for a mistrial was made, and it therefore is not a valid ground of a motion for a new trial.

6. Ground 8 complains of the admission of certain testimony of a witness introduced by the opposite party, a part of which was given on direct examination and a part on cross-examination. The objection was overruled before any of the evidence was given and therefore before the court knew what the evidence would be, and was not renewed after the evidence was heard. After the anticipatory objection was made, the movants' counsel voluntarily elicited some of the evidence which is objected to as a whole. *Held:* No error is shown of which the movants

can complain. However, the evidence appears to have been relevant for the purpose of showing that the signature of D was placed upon the back of the note some time after the execution of the same by A, B, and C, and for the purpose of illustrating her claim that she did not know that B and C were merely sureties for A at the time of her indorsement. Moreover, evidence substantially of the same nature was voluntarily offered through a witness introduced by the movants.

7. Ground 10, complaining of the admission of the testimony of D in respect to sayings of A in relation to the liability which D would assume in signing her name upon the back of the notes, upon the ground that this testimony was hearsay and could not be binding upon B and C, is without merit. Under such circumstances any testimony as to the conversations between D and A, so far as the same related to the terms upon which D was indorsing the paper, was pertinent, under the authority of the Civil Code (1910), § 5796, which provides that " Blank indorsements of negotiable paper may always be explained between the parties themselves, or those taking with notice of dishonor or of the actual facts of such endorsements." This section applies to accommodation indorsements. *Atkinson* v. *Bennet*, 103 *Ga.* 508 (30 S. E. 599); *McMillan* v. *Fourth National Bank*, 17 *Ga. App.* 590 (87 S. E. 843). See also Civil Code (1910), §§ 5766, 5794; *King* v. *King*, 45 *Ga.* 644 (3); *Anderson* v. *Brown*, 72 *Ga.* 713 (3); *Atlantic Compress Co.* v. *Chambliss*, 15 *Ga. App.* 747 (2) (84 S. E. 155).

8. Ground 13 complains that the court erred in charging the jury that B and C contended that they and D " were equally liable to the plaintiff for their proportionate parts of the judgment; that is to say, one third each," upon the ground that this was not a proper statement of movants' contentions, in that, B and C having already paid two thirds of the obligation, they claimed that the remaining one third should be paid, as among themselves, altogether by D. This charge was not accurate, but is not cause for a reversal, in view of the further charge by which it was immediately followed, in which the contentions of the parties were amplified and expressed with such accuracy that the entire charge could not possibly have been confusing or the movants prejudiced by the foregoing excerpt.

9. There were some material conflicts in the evidence, even though slight, and it was not error for the court to instruct the jury in reference to their duty to reconcile conflicts or discrepancies if they might do so without imputing perjury to any witness; but if no conflicts existed, it does not appear by the record in what way this charge could have prejudiced the plaintiffs in error.

10. Ground 16 complains that the court erred in charging the jury in reference to the contentions of the movants that D had in effect admitted her cosuretyship to one of them, upon the ground that the movants contended that such an admission had been made to each of them, and that, therefore, the charge only stated their contentions in part. While this is true, and the charge was in this respect inapt, it cannot, in view of the instructions as a whole, be held that the jury could have understood the court to exclude that part of the movants' contentions which should

properly have been stated in connection with the excerpt above quoted; and the inaccuracy of this excerpt does not alone furnish sufficient ground for reversal.

11. The court charged that admissions should be " received with care." Error is assigned upon this instruction, upon the ground that the court should have charged, instead, that admissions are to be scanned with care. There was no substantial error in the charge as given. *Solomon* v. *Solomon*, 2 *Ga.* 18 (5), 30; *Ocean Steamship Co.* v. *McAlpin*, 69 *Ga.* 437 (4).

12. The instruction by which the question of the suretyship for A of B and C was submitted for determination by the jury was not error on the ground that such suretyship was an admitted and uncontested fact in the case. While such suretyship did indisputably appear, there was some issue as to whether this fact was known to D at the time of her indorsement of the note, and consequently it was for the jury to determine whether B and C should be treated as sureties or principals in so far as D was concerned. *Frye* v. *Sims*, supra. This ruling relates to grounds 18 and 19.

13. There is no merit in ground 12, since it is never error for the court to decline to direct a verdict.

14. There was some evidence to have authorized a verdict either for the plaintiff or the defendants, but the evidence was slight upon the material issue, and the testimony the admission of which is complained of in ground 11 was not only irrelevant and immaterial, but was so probably prejudicial to the plaintiffs in error that a new trial must result. For this reason only it was error to overrule the motion for a new trial.

DECIDED FEBRUARY 15, 1923.

Complaint; from city court of Cartersville — Judge Townsend. February 2, 1922.

*Dowling & Askew, John T. Norris,* for plaintiff in error.

*Finley & Henson, Neel & Neel,* contra.

BELL, J. For brevity and convenience we have arbitrarily referred in the headnotes to the parties at issue by alphabetical designations. None of the headnotes require elaboration except the last one. Before proceeding to that, however, we will discuss the case with reference to its general phases under the head of the general grounds of the motion for a new trial.

John C. Haney filed a suit upon two promissory notes, against J. S. Taff and R. W. Taff as alleged principals, and against Mrs. Kittie P. Larey as an alleged indorser. J. C. Taff, whose name appears first upon the notes, was not made a party defendant, it being alleged that his whereabouts were unknown. The two notes were identical in form, one of which is given as follows:

"$2,000.00                    Cartersville, Ga., May 17, 1920.

"On January 1, 1921, after date we promise to pay John C. Haney or order two thousand dollars for value received. Payable at Cartersville with interest from date at the rate of eight per cent. per annum, with all costs of collection, including ten per cent. attorney's fees. Each of us, whether principal, security, guarantor, endorser, or any other party hereto, hereby waives and renounces, each for himself and family, any and all homestead and exemption rights and any and all exemption of daily, weekly, monthly or yearly wages, or salary·of each of us, from the process of garnishment, either of us or the family of either of us, may have under or by virtue of the constitution or laws, State or Federal, as against this debt or any renewal thereof. Notice of non-payment and protest waived. Given under the hand and seal of each party.                         J. C. Taff (L.S.)

J. S. Taff (L.S.)

R. W. Taff (L.S.)

On back of note:   "Mrs. Kittie P. Larey."

"Paid $1413.34 Feb. 16, 1921."

J. S. Taff and R. W. Taff, prior to judgment, under the terms of section 3556 of the Civil Code (1910), gave notice in writing to the plaintiff and to Mrs. Larey that they intended in the trial of the case to set up that they were sureties for J. C. Taff and cosureties with Mrs. Larey. And they subsequently filed an answer in accordance with this notice. The suit was not for the entire principal, but was for only one third of the aggregate amount of the notes, it being shown by the petition that two thirds thereof had been previously paid. In the trial it appeared indisputably that this payment had been made by J. S. and R. W. Taff. They sought to maintain, not as against the plaintiff, of course, but as between themselves and Mrs. Larey, that the latter was liable as a cosurety with them for J. C. Taff, and that, they having paid two thirds of the original debt, Mrs. Larey was liable as among themselves to pay the remaining third. Mrs. Larey answered that she was not a cosurety, but that J. C. Taff, J. S. Taff, and R. W. Taff, as far as she knew at the time of her indorsement, were joint principals, and that she signed the same intending thereby to become an accommodation indorser for all of them together, and not a cosurety with J. S. Taff and R. W. Taff for J. C. Taff. It does not appear that she gave notice to any person (as did. the

other defendants), except as may appear from her answer that she would seek to assert this position. In passing we may say that this was unnecessary as to her, because the code-section already referred to requires such notice only when the fact of suretyship does not appear upon the face of the contract; and, as ruled in the first headnote, such a suretyship as claimed by her prima facie appeared from the physical manner of her indorsement. It is otherwise, however, as to the other defendants, who, upon the authorities cited in the same connection, were prima facie presumed to be principals.

The contest in the trial was not one with which the plaintiff was concerned, but was solely between J. S. and R. W. Taff on one side and Mrs. Larey on the other, for the purpose of determining the relation which they bore to each other in respect to the debt. It unquestionably was established that J. S. and R. W. Taff were only sureties for J. C. Taff, notwithstanding that upon the papers they were prima facie principals with him. Unquestionably, also, in so far as the plaintiff was concerned, Mrs. Larey was jointly and severally liable to the plaintiff as an accommodation indorser with the other two defendants. The only issue referable to a jury was whether Mrs. Larey was a cosurety with them. The jury found in her favor, and a verdict and judgment were framed under such terms as to make the Taffs primary sureties and Mrs. Larey a secondary surety for the debt. The Taffs are excepting to the refusal of the court to grant them a new trial.

Suretyship is defined by the code as follows: " The contract of suretyship is that whereby one obligates himself to pay the debt of another in consideration of credit or indulgence, or other benefit given to his principal, the principal remaining bound therefor. It differs from a guaranty in this, that the consideration of the latter is a benefit flowing to the guarantor." Civil Code (1910), § 3538. This definition, however, does not greatly aid us in determining the question of cosuretyship between the parties here at issue. " Cosureties are those who are called upon as among themselves on a contract of suretyship for the same debtor and for the same debt, although not necessarily in equal amounts, or on the same instrument. This is true although they become sureties at different times without negotiating with each other, and each without knowledge that the other has intended to enter

that relation." 32 Corpus Juris, 15. It appears, by the evidence, that the notes in question were signed by J. C. Taff, J. S. Taff, and R. W. Taff in Colquitt county, Georgia, and were thereafter taken by the first named to Bartow county, Georgia, where he negotiated them, after procuring the signature of Mrs. Larey thereto, apparently as an accommodation indorser. It also appears that neither did J. S. Taff nor R. W. Taff know that Mrs. Larey would sign the notes in such capacity or in any capacity, nor does it appear that they found out she had signed them before they were negotiated. In fact it is not shown when they first learned of it. But this, under the principles stated, would not prevent her from becoming a cosurety, if she knew at the time she indorsed the notes that they were not principals with J. C. Taff, but merely sureties for him, and if she intended to become surety for him also. Under these circumstances she and they would be cosureties, notwithstanding they signed the papers in apparently different relations thereto, at different times, and without any knowledge or expectation of the first signers that she would join them in this relation. It may be reasonably presumed that one who signs a note as surety is willing for others, even without his knowledge, to become cosureties with him. Whitehouse *v.* Hanson, 42 N. H. 1 (1) 21. Presumptively, at least, a party accepts whatever is for his benefit. *Ross* v. *Campbell,* 73 *Ga.* 309 (2) ; *Beardsley* v. *Hilson,* 94 *Ga.* 50 (1), 53 (20 S. E. 272) ; Whitehouse *v.* Hanson, supra.

This is in no wise repugnant to the idea of contribution. Contribution does not necessarily rest upon the original contract. It " arises out of the relation created thereby, of the common obligation and the contract implied therefrom of discharging the common obligation equally." It is founded upon the principle that equality is equity. *McLin* v. *Harvey,* 8 *Ga. App.* 360 (3) 366 (69 S. E. 123) ; 32 Cyc. 276. The plaintiffs in error are therefore in position to urge the liability of Mrs. Larey as a cosurety with them even though there may have been no concert of action between them. But on the other hand, before one can become a surety *for another,* the consent or acceptance of the latter is necessary. Whitehouse *v.* Hanson, supra. This applies, of course, only as between the parties themselves and does not prevent the creditor from holding one as surety for another without the principal's

knowledge or consent, if the creditor has a contract with such one accordingly. So in this case Mrs. Larey could, as between herself and the payee, become a surety for J. S. and R. W. Taff, without the knowledge or consent of the Taffs; but in order for her to maintain as to them that she bears such relation, it will be necessary for them to have had notice of and to have accepted her offer to assume that relation. One surety cannot be made principal as to another surety except at the latter's request. 32 Cyc. 30. The insistence, therefore, of the plaintiffs in error that Mrs. Larey could not maintain her contention that she was merely a surety for them and J. C. Taff without their consent is perfectly sound in so far as they are concerned. If they do not want her as their surety, they do not, under the law, have to take her as such. It does not follow, however, that as between herself and the creditor she could not become a surety for them, notwithstanding she may have signed the paper under such circumstances that as to them she did not assume that relation, on account of their not having accepted her offer so to do. Her mere indorsement may be considered as such offer.

She can, therefore, if it be the truth, maintain the position asserted by her, to wit, that she became surety for the other signers of the note in so far as the creditor was concerned, regardless of the knowledge or consent of the others, and if this is found to be the fact, she should prevail; though not quite to the extent allowed by the verdict and judgment complained of. If she were not their surety, she would not be entitled to control any judgment or fi. fa. as against them merely because she agreed with the creditor to become such. Under these circumstances she would as to them be no surety at all, and would, therefore, not have the rights of a surety as against them. So she is not entitled, even if she prevail, to have it set up in the verdict and judgment that she is to control the fi. fa. merely by reason of her agreement with the creditor, they having had no notice thereof and not having accepted the same. The benefits of section 3558 of the code are for an actual surety, who becomes such on the authority of the principal. If she would control the fi. fa., she can do so only by purchasing it just as any other stranger. These observations are in view of Mrs. Larey's pleadings to the effect that the other defendants did not know of her indorsement at the time thereof, and

therefore disclosing that as to them no relation was created thereby.

In the state of the pleadings and the undisputed evidence there is only one issue in the case, and that is this: Did Mrs. Larey at the time she indorsed her name upon the notes have knowledge that J. S. Taff and R. W. Taff were sureties for J. C. Taff, and did she by such indorsement intend and contract to become thereby a surety also for J. C. Taff. If she did, they all were cosureties and the Taffs ought to prevail in this proceeding; otherwise not; nor would it follow absolutely that even if she knew of the suretyship of J. S. and R. W. Taff she became cosurety with them. Knowledge of their suretyship alone would not make her a cosurety. She might with such knowledge have consented to become a surety as to the creditor only for J. C. Taff, J. S. Taff, and R. W. Taff all together. Three facts are necessary to make her a cosurety: (1) Suretyship of J. S. Taff and R. W. Taff. This is unquestionably established by the record as it is *now* before us. (2) Knowledge on the part of Mrs. Larey of such suretyship at the time of her indorsement. (3) A contract by her indorsement to become a surety also, not for all of the others, but for J. C. Taff alone. She had the right to stipulate the character of the liability which she assumed in signing the papers, and parol evidence is admissible to prove the liability which she did assume in such act. Civil Code (1910), § 5796.

A part of what we have said in the foregoing, especially as to the right of Mrs. Larey to control the fi. fa., seems more or less technical and not to reach the substantial rights of the parties. However, we believe that we have correctly stated the law. We entered into that feature of the case because we were attracted thereto by the interesting briefs which were filed by the attorneys for both sides. A number of authorities were cited by them which we have not referred to in this opinion, but which we have examined not only with interest but with profit. We think that the principles which we have above announced are not in conflict with the cases which have been cited by either side; and, what is more, we think that the authorities relied upon in the *opposing* briefs are in general accord with each other upon the propositions which we have announced.

Applying the foregoing principles to the evidence which was ad-

duced upon the trial, a verdict was not demanded for either party, but the jury would have been authorized to find either for the plaintiffs in error or for the defendant in error.

We come now to the point referred to in the last headnote. Upon the issues in dispute the evidence was slight, mostly circumstantial, and a ruling prejudicial to either party might have turned the scales against the interest of the real truth and justice of the case. The court permitted Mrs. Larey, over objection of the other defendants, to testify as follows: " At the time of these two conversations with the two Taffs and Mr. Lockridge I was on various other papers with Clarence. I knew the amounts of these various papers I had signed with him, but I didn't know whether I had signed them on the back, face or how." It seems that she was trying to explain that if she made any admissions to the other defendants they were made when she was not informed as to the legal effect of her signature. Parenthetically, let it be said here that her signature's physical relation to the paper, though raising a prima facie presumption for the contention which she sought to establish, is of no legal effect whatever as against the real fact and truth as to the nature of the contract into which she intended to enter. It does not matter where her name was placed, if she intended to become a cosurety with the other two defendants. However, she did know that she had signed these particular notes upon the " back;" and whether she remembered how she had signed other notes would be immaterial in so far as the record discloses. And in testifying in this connection that she was " on various other papers with Clarence " (J. C. Taff), she gave evidence which we think was not only irrelevant, but which was prejudicial to the other defendants. The record shows that she is a lady of advanced age, that J. C. or Clarence Taff is her son-in-law; that he is a son of one of the plaintiffs in error and a nephew of the other. In view of these relationships, the jury might have been swayed unconsciously to place the whole liability for these notes upon the blood relations of the principal debtor, especially after learning that Mrs. Larey was already on various other papers with him, and thus to find in her favor independently of any contract which she may have made to become a cosurety with the plaintiffs in error for him. While the admission of evidence which is merely irrelevant and immaterial is not ground for reversal, " unless

a reasonable likelihood of prejudicial effect appears?" (*Watkins* v. *Woodbery*, 24 *Ga. App.* 80 (2) 100 S. E. 34), such likelihood does appear in the instant case. In so close a case upon the facts, we are quite certain that the plaintiffs in error are entitled to a new trial, and we order accordingly. *Central of Ga. Ry. Co.* v. *Prior*, 142 *Ga.* 536 (2) (83 S. E. 117); *McGriff* v. *McGriff*, 154 *Ga.* 560 (115 S. E. 21).

As the case must go back, we will say further that it should be submitted merely for a finding either in favor of or against the cosuretyship as contended for by the Taffs. The answer of Mrs. Larey was good only as a denial thereof. It was insufficient to set up affirmatively a suretyship of any other character.

Let it be distinctly understood, also, that the reversal of the judgment will not disturb the verdict and judgment which the plaintiff Haney has already obtained, jointly and severally, against the parties to this controversy. It will only apply to the relationship between the parties hereto as the same has been stated therein.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*