CASE 35—CONTRIBUTION—SEPTEMBER 6, 1884.

## Cochran, &c., v. Walker's Ex'rs.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. An action was instituted against a defaulting bank cashier and several sureties. During the pendency of the suit, one of the sureties, W., died. The suit abated and was not revived. The other sureties having paid, after the statute would have run as between the original obligee and W., his personal representative can not have contribution against W.'s executors.

2. A surety who has paid a judgment can not enforce contribution against his co-surety, if, when the debt was paid, the statute of limitations ran as between the original obligee and the co-surety or his executor.

·J. & J. CALDWELL & WINSTON, HAMILTON POPE, R. & L. BUCHANAN AND BIJUR & DAVIE FOR APPELLANTS.

1. The surety's right of action for contribution against his co-surety does not accrue at the date of the bond, but at the time when the surety has been compelled to pay the co-surety's share of the liability. Then, for the first time, the surety has a claim against the co-surety; and limitation on the claim for contribution begins to run from that time.

2. The right of the surety to sue his co-surety for contribution is in no manner dependent on the right of the creditor to sue the co-surety. The action does not lie upon the bond, but in *assumpsit* or on an equitable principle growing out of the payment by the surety of the

share which the co-surety ought to have paid. It is only after one surety has discharged the creditor's claim that his cause of action arises.

3. The statute of sureties and co-obligors is in no sense a statute of limitation; and is a mere privilege given to one surety, which he may use or not, as he deems best, and from the failure to use which no rights of the surety are forfeited or limited. (18 Mo., 146; 17 Ib., 475; Brandt on Suretyship, section 259; Caldwell v. Roberts, 1 Dana, 357; 11 B. Mon., 302; 6 Dana, 103; 6 J. J. Mar., 62; Ib., 64; 7 Ib., 558; Robertson v. Maxey, 6 Dana, 102; 6 Meeson & Welby, 153; 1 Md. (Mass.), 387; 10 Richardson's Eq. Rep., 143; 37 Ala., 402; 10 N. H., 321; 23 Maine, 156; 45 Mo., 879; 6 Iowa, 516; 4 Devereux (N. C.), 360; 15 Florida, 554; Parson's Court, volume 1, 36; 20 Ohio Stat. Rep., 337; 15 Ohio, 577; 17 Ib., 354; 15 Gray, 557; 6 Vesey, 185, General Statutes, 798; Brandt Suretyship, section 223; 19 Pick, 260; General Statutes, 52; 37 Ala., 402; 6 Ib., 780; 23 Vt., 581; Bosley v. Taylor, 5 Dana, 159; Sayler's Stat. Ohio, volume 1, 518; Wagner's Mo. Stat, volume 2, 1302; Iowa New Rev., chapter 75; Alabama Code, section 2647; Battle's Rev. N. C., 822.)

BARRETT & BROWN FOR APPELLEES.

1. The liability of Walker was that of surety upon an ordinary bond. He and his estate were discharged from liability by seven years having elapsed without suit after accrual of the cause of action.

2. The *General Statutes, chapter* 71, *article* 6, *section* 4, provide that a surety in any obligation or contract other than those provided for in the next two preceding sections shall be discharged from all liability thereon, when seven years shall have elapsed, without suit thereon after the cause of action accrued.

3. This is but a re-enactment of the law as contained in Revised Statutes, volume 2, 400.

4. The plain, legal remedy of appellants was to require the party suing on the bond to revive against Walker's representatives, as provided by General Statutes, 798; Revised Statutes, volume 2, 109. There can be no ground for reversal. (Shelton v. Farmer, 9 Bush, 314; Brandt on Suretyship, section 241.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

Henry L. Pope, a bank cashier, executed his bond as such, with the appellants and one W. H. Walker as his sureties. The covenants of his bond having been broken, an action was instituted in the name of the Loretto Association and others, against Pope and his sureties for the breach, the action finally terminating

under the name of Davis, &c., v. McCorkle, reported in 14th Bush, page 746. All the sureties on this bond, including W. H. Walker, were made defendants, served with process and filed a joint defense. Walker died on the second of May, 1872, and his death was noted of record on the third of May, 1872. The action was then prosecuted against the surviving parties, including his co-sureties (the appellants), resulting in a judgment against the sureties on the seventeenth of May, 1879. That judgment was subsequently paid by the sureties, in May or June, 1879, and this action is by them against ———————, Walker's executors and devisees, for contribution.

The original action abated as to Walker, on the third of May, 1872, and was never revived against his personal representative or devisees. All the sureties in this bond would have been released from liability if the original creditor had failed to sue within seven years after the accrual of the cause of action, and if all right of action on the bond was barred on the part of the obligees against Walker, when this judgment was rendered against his co-sureties, then, as already adjudged by this court in the case of Shelton v. Farmer, 9th Bush, Walker's executors and devisees can not be compelled to contribute.

In applying the principle recognized in that case we find nothing to distinguish it from the case before us. The original action against the sureties had been pending for more than eight years, and seven years had elapsed from the time Walker's death was entered of record until the final judgment against his co-sureties. It is true a judgment was rendered in December, 1875,

but that judgment was suspended or superseded by the appellants and not enforceable until the seventeenth of May, 1879. An attempt at that date to obtain a judgment by the obligee against Walker's executors could have been defeated by reason of the lapse of time. The right of action between co-sureties for contribution accrues when one surety pays more than his portion of the liability, and the statute begins to run from that time and not from the time the debt, for which they are liable, becomes due. This general doctrine, recognized in all the text-books, is not controverted by the ruling in Shelton v. Farmer, only so far as the rights of the parties may be affected by the lapse of time. It is conceded that if one surety pays the debt to his principal after the running of the statute, he has no right of contribution against his co-surety, so as to defeat the plea of limitation. If this doctrine is sound, and it will not be questioned, why can one surety, by prolonging the recovery in making a defense to the action or otherwise, affect the right of his co-surety who is not a party to the action? If the plaintiffs in the original action had revived it as against Walker's executors and devisees after the lapse of seven years, but before final judgment, they could, by pleading the statute, have prevented a recovery and obtained a judgment in their favor.

With a judgment for them, as against the principal, it is urged that the co-surety, who had been an acting defendant from the inception of the action until final judgment, would be entitled to contribution because suit had been instituted by the principal obligee against all the parties before the running of the statute.

Walker was a party to the action and had united in the defense, but when the action was dismissed as to him or had abated by reason of his death, the statute ran, there being no revivor, as if Walker had never been served with process. We are aware of the rule laid down by Mr. Brandt in his work on Suretyship, and have examined the decisions referred to by counsel, sustaining that view of the question, "that where suit is commenced against one surety before the running of the statute, the fact that the claim is barred as to the obligee before judgment or payment by the surety, does not affect his right to contribution." Still we are unable to see the reason for such a rule, when, by express statute, the means is afforded the surety who is sued of compelling the obligee or the parties suing to bring all the obligors or sureties before the court. While the obligee is not compelled to delay asking a judgment until all are served, it preserves the right of action, and if one of the sureties or obligors should die before judgment or during the pending of the action, as we construe the statute, those of the obligors or sureties before the court can compel a revivor.

Section 11, of chapter 104, was enacted for the protection of sureties, and should be construed so as to carry out the legislative intent, and in considering the case of Shelton v. Farmer, that provision, or one similar in the Revised Statutes, was before the court, and the decision controlled by the consideration there given it. Section 241, of Brandt on Suretyship, refers to Shelton v. Farmer, and says that the surety was released from contribution "because the surety who was sued had a statutory right to have compelled a suit

to be brought against the other surety." If the surety sued has no remedy enabling him to have all the parties (his co-sureties) brought before the court, there is a stronger reason for the adoption of the rule contended for by counsel for appellants, but then the reason for such a doctrine is neither satisfactory nor conclusive.

As a general rule, where the obligee is barred from recovery against a surety by reason of the lapse of time, his co-surety should not be allowed to pay the debt, so as to make his co-surety contribute. The cases cited by counsel, but few of them if any are based upon the construction of statutes for the protection of sureties, and if they were, we would be reluctant, and ought not at this late day reconsider the rule of construction or the doctrine recognized in Shelton v. Farmer. That opinion was delivered for publication at the winter term, 1872. It has doubtless been followed by this and other courts of the State in determining the liability of sureties, the one to the other, and, having been established as a precedent for nearly twelve years, we can see that no good but much harm might result in now disregarding a rule so long established.

All other decisions in courts inferior to this court have been required to conform to it, and, as said in Tubble v. Lane, 7 Monroe, "It is of greater importance that a rule should be uniform and stable than that it should be the best possible rule adopted."

The judgment below is therefore affirmed.