WILLIAM FREW ET AL., APPELLEES, v. GEORGE SCOULAR, APPELLANT.

FILED APRIL 14, 1917.   No. 18734.

1. **Principal and Surety**: CONTRIBUTION: LIMITATIONS. A surety in whose favor the statute of limitations has not run, who has done nothing to suspend its operation, and who has been compelled to

pay the debt of his principal, may exact contribution from a co-surety in another state, though under the laws thereof the creditor's claim against the latter was barred when the principal's debt was paid.

2. **Parol Evidence: Sureties: Contribution.** In an action by a surety for contribution from an alleged cosurety, parol evidence may be admitted to show the actual relation of the parties to the obligation discharged by plaintiff.

Appeal from the district court for Nuckolls county: Leslie G. Hurd, Judge. *Reversed.*

*W. G. Hastings* and *Buck, Brubaker & Buck,* for appellant.

*Charles Battelle* and *Cole & Brown,* contra.

Rose, J.

This is an action for contribution between sureties. It is alleged in the petition that, April 17, 1894, George Scoular, William Frew, Thomas Donald and Janet Scoular, as sureties, and Robert and William Scoular, as principals, executed a bond for the payment of a loan of £1,500. The bond matured May 15, 1894, and was secured by a mortgage on land in Scotland, where all the parties resided except defendant, a resident of Nebraska. It is also alleged that the principals in the bond became insolvent, that the incumbered land was sold in satisfaction of prior liens, and that, in 1912, William Frew and the trustees of the estate of Thomas Donald, plaintiffs herein, were compelled to pay the debt. It is alleged further that the laws of Scotland do not bar an action on the bond before 40 years. The suit is brought against George Scoular to compel contribution in the sum of $2,999, his alleged liability as one of three solvent sureties. Defendant pleaded that he signed the bond in Nebraska, that he was then, and has since been, a resident thereof, and that the action is barred here by the statute of limitations—a five-year period. Rev. St. 1913, sec. 7567. Defendant also pleaded that he was not a surety, but that he signed the bond under an agreement to merely release any inheritable interest he might have in

the mortgaged land.   The trial court directed a verdict for
plaintiffs, and from a judgment in their favor for $3,018.·
12, defendant has appealed.

Should defendant's plea of the statute of limitations be
sustained?   The question may be stated thus:   May a
surety in whose favor the statute of limitations has not
run, who has done nothing to suspend its operation, and
who has been compelled to pay the debt of his principal,
exact contribution from a cosurety in another state,
though under the laws thereof the creditor's claim against
the latter was barred when the principal's debt was paid?
While the decisions appear to be in conflict, the better rea-
son and the weight of authority seem to support the rule
requiring contribution.   *Camp v. Bostwick,* 20 Ohio St.
337;  *Wood v. Leland,* 1 Met. (Mass.) 387;  *May v. Vann,*
15 Fla. 553;  *Crosby v. Wyatt,* 23 Me. 156;  *Crosby v.
Wyatt,* 10 N. H. 319;  *Martin v. Frantz,* 127 Pa. St. 389;
*Aldrich v. Aldrich,* 56 Vt. 324;  *Wolmershausen v. Gullick,*
2 L. R. (1893) Ch. Div. (Eng.) 514.

In *Camp v. Bostwick,* 20 Ohio St. 337, it was contended,
as in the present case, that, since the statute of limitations
had barred an action by the creditor against the defendant
before the plaintiff paid the debt, defendant received no
benefit from such payment and was not liable for contribu-
tion.   In answer to this argument the court said:

"If the right of a cosurety to claim contribution rested
upon the doctrine of subrogation to the rights of the cred-
itor, the proposition might be true.   The doctrine of sub-
rogation has its origin in the relation of principal and
surety, whereby a surety who pays the debt of his principal
is, in equity, substituted in the place of the creditor and is
entitled to all the rights which the creditor may have
against his principal.   But the doctrine of contribution has
its origin in the relation of cosureties or other joint promis-
ors in the same degree of obligation.   It is not founded
upon the contract of suretyship.   1 Ohio St. 327, and 1
Cox, 318.   It is an equity which springs up at the time the
relation of cosureties is entered into, and ripens into a cause

of action when one surety pays more than his proportion of the debt. 4 Grat. (Va.) 268. From this relation the common law implies a promise to contribute in case of unequal payments by cosureties. But equity resorts to no such fiction. It equalizes burdens and recognizes and enforces the reasonable expectations of cosureties because it is just and right in good morals, and not because of any supposed promise between them. This equity, having once arisen between cosureties, this reasonable expectation that each will bear his share of the burden is, as it were, a vested right in each, and remains for his protection until he is released from all his liability in excess of his ratable share of the burden. Neither the creditor, the principal, the statute of limitations, nor the death of a party, can take it away."

Defendant argues that the Ohio case is based upon *Wood v. Leland,* 1 Met. (Mass.) 387, a suit in equity which must be distinguished, contribution now being a legal remedy to which the statute of limitations should be applied. The argument is not conclusive. The question is not whether the statute of limitations runs against a surety's claim for contribution, but when does the cause of action for contribution accrue? Ordinarily the statute of limitations does not commence to run until the cause of action accrues. The right of a surety to contribution does not arise until he has paid more than his proportion of the debt or until his liability has been determined by judgment. *May v. Vann,* 15 Fla. 553; *Wolmershausen v. Gullick,* 2 L. R. (1893) Ch. Div. (Eng.) 514; *Ex parte Snowdon,* 17 L. R. Ch. Div. (Eng.) 44. Upon this point most of the cases cited by defendant appear to be distinguishable. *Cochran v. Walker's Ex'rs,* 82 Ky. 220, and *Shelton v. Farmer,* 9 Bush (Ky.) 314, are decisions under local statutes modifying the general rule. *Lovell v. Nelson,* 11 Allen (Mass.) 101, and *Spelman v. Talbot,* 123 Mass. 489, rest upon special statutes relating to claims against the estates of deceased persons, but recognize the general rule announced in *Wood v. Leland,* 1 Met. (Mass.) 387. *Stockmeyer v.*

*Oertling,* 35 La. Ann. 467, without discussion, follows *Ledoux v. Durrive,* 10 La. Ann. 7, and neither case involves the statute of limitations. *Turner's Adm'r v. Thom,* 89. Va. 745, appears to be a case where payment by the plaintiff was voluntary; the statute of limitations having run in favor of both sureties. *Stone v. Hammell,* 83 Cal. 547, is a case where the plaintiff by absence from the state had suspended the operation of the statute. *McLin v. Harvey,* 8 Ga. App. 360, without any discussion of the principles underlying contribution, and *Screven v. Joyner,* 1 Hill Ch. (S. Car.) *252, announce the rule urged by defendant herein, but the reasoning is not convincing. The action for contribution was not barred by the statute of limitations.

The trial court excluded testimony tending to show that defendant signed the bond at the request of his brother, one of the principals therein, and that it was agreed between them and the obligee that defendant was merely releasing whatever inheritable interest he might have in the incumbered land, and that plaintiffs knew defendant was not to be held as a surety. This is not an action on the bond, but a suit between sureties to enforce contribution. Evidence was therefore admissible to show the actual relation of the parties to the bond. 4 Wigmore, Evidence, secs. 2444, 2445; *Chapman v. Garber,* 46 Neb. 16; *Cox v. Ellsworth,* 97 Neb. 392; *Oldham v. Broom,* 28 Ohio St. 41; *Chapeze v. Young,* 87 Ky. 476; *Leeper v. Paschal,* 70 Mo. App. 117; *Shea v. Vahey,* 215 Mass. 80; *Enterprise Brewing Co. v. Canning,* 210 Mass. 285; *Bulkeley v. House,* 62 Conn. 459, 21 L. R. A. 247. In the case last cited it was said:

"In considering the questions involved it should be borne in mind that this is an action for contribution. Contribution does not rest upon contract, but on the broad equitable principle that equality is equity. Justice and fair dealing demand that where one or more parties sign the same obligation, and become equally obligated in precisely the same degree thereby, and stand upon the same

footing as to their liabilities thereunder, one of the number shall not be compelled to assume the whole burden for his associates, but may compel them to share equally with him any loss that may occur as the result of their joint liability. In actions for contribution, therefore, the principle seems now to be well established that parol evidence is admissible to show the true relations existing between the several parties bound by a written obligation. * * * Such evidence is not offered to contradict or vary the contract contained in the writing, but simply to show the actual relations subsisting between the joint makers of the note and the real nature of the contract between them. Such facts are not a part of the contract and do not affect its terms, but are wholly collateral to it. To support his claim for contribution therefore, the plaintiff clearly had the right to show his true relation to the note, and this without regard to the knowledge of the defendant."

If defendant was not one of the sureties, he is not liable for contribution. The trial court therefore erred in excluding evidence on this issue. It follows that the judgment is reversed and the cause remanded for further proceedings.

REVERSED.

CORNISH and DEAN, JJ., not sitting.

HAMER, J., concurring in part, and dissenting as to that part of the majority opinion which refuses to dismiss the case.

I concur in so much of the opinion as holds that the judgment of the district court shall not stand and reverses the same. But I would go further and dismiss the case. To the mind of the writer the majority opinion would import the Scotch statute of limitations into Nebraska and determine the liability of the defendant by that statute, and without consulting our own statute of limitations. It denies to the resident in Nebraska the protection which the Nebraska statute of limitations confers upon him. I would ask my brethren who are responsible for the majority opin-

ion if the statute of limitations of this state does not run
in favor of a man who was a resident of Nebraska at the
time he signed the contract and has never since changed
that residence?

It is said in *Bell v. Morrison*, 1 Pet. (U. S.) *351, opin-
ion by Justice Story: "It has often been matter of regret,
in modern times, that, in the construction of the statute of
limitations, the decisions had not proceeded upon princi-
ples better adapted to carry into effect the real objects of
the statute; that instead of being viewed in an unfavorable
light, as an unjust and discreditable defense, it had re-
ceived such support as would have made it, what it was in-
tended to be, emphatically, a statute of repose. It is a
wise and beneficial law, not designed merely to raise a pre-
sumption of payment of a just debt, from lapse of time, but
to afford security against stale demands, after the true
state of the transactions may have been forgotten, or be
incapable of explanation, by reason of the death or removal
of witnesses. It has a manifest tendency to produce speedy
settlements of accounts, and to suppress those perjuries
which may rise up at a distance of time, and baffle every
honest effort to counteract or overcome them."

The majority opinion concedes that "the decisions ap-
pear to be in conflict," but then says that the better reason
is that there shall be a rule allowing contribution. This
decision in effect imports, in a way, the Scotch statute of
limitations to Nebraska.

It should be remembered that this is not an action on the
instrument which the defendant signed. This is an action
to enforce contribution. It is based on the claim of the
plaintiffs that the defendant was liable with them as a co-
surety, and that they paid the debt, and therefore, that
he should pay them his share. Before the defendant can be
liable he should stand upon the same footing and be under
the same burden with the other sureties when they paid the
debt. The right to enforce contribution is based upon the
fact that one or more of several, having a common liability,
has paid the debt. If the basic fact upon which the right

rests, the common liability, is lacking, payment by the co-surety gives no right to contribution.

The majority opinion does not answer the questions: (1) Does the Nebraska statute run in Nebraska? (2) If it does run, could the holders of the instrument showing the indebtedness sue the defendant in Nebraska upon it after the expiration of five years from the time it came due, and maintain an action upon it? (3) If they could not, then was the defendant liable upon the said bond and mortgage at the time the plaintiffs paid and satisfied it, between 17 and 18 years after it became due? (4) And if the defendant was not liable upon it, what sort of favor did the plaintiffs confer upon the defendant when they paid it? (5) And if the Scotch statute of limitations is 40 years, and the plaintiffs were still liable under it for the debt up to the time they paid it, and the defendant, who lived in Nebraska, and not in Scotland, had been released from the payment of it by the Nebraska statute of limitations, five years, can you explain how the sureties in Scotland and the alleged surety in Nebraska actually stood upon the same footing and carried the same burden when the Scotch sureties paid the debt in Scotland, and, if you cannot explain it, why should the rule that there can be no contribu-ton enforced between sureties unless at the time of pay-ment the sureties who pay and the surety against whom contribution is sought stand upon the same footing and carry the same burden be disregarded in this case?

I have looked and listened in vain for answers to these questions.

When the Scotch sureties paid the original debt due on the mortgage the defendant had already been released from the payment of that debt if the statute of limitations runs in Nebraska. But the Scotch sureties were still liable on the original mortgage when they paid the debt, because they were living in Scotland under a statute of limitations by which the debt would be continued 40 years. But at this time the defendant was not liable, if he had ever been liable, because the Nebraska statute of limitations had re-

leased him from the payment of that original debt. If the defendant had been released from the payment of the original debt by the statute of limitations of the state of Nebraska, then he did not stand on the same footing as the Scotch sureties in Scotland, and there could be no way to make the defendant liable unless he made a new promise, and this he is not shown to have done.

We have only to inquire whether Clark, the creditor in Scotland, or the trustee in charge of his estate, could come to Nebraska and maintain an action against the defendant on the instrument which it is alleged he signed. Of course, no such action might be maintained in Nebraska, because the Nebraska statute of limitations rendered the maintenance of such an action impossible, but it is claimed that the cosureties paid the debt, and therefore that they acquired the right to compel the defendant to pay what they allege was his proportion. And now as the Nebraska statute of limitations does run in Nebraska, and the defendant had been released from the payment of the original debt by such statute, he must have been already discharged. Of course, if the sureties in Scotland had chosen to pay the debt before the statute of limitations in Nebraska outlawed it, they might have done so, and then they could have come to Nebraska and could have successfully sued the defendant for contribution and maintained their suit against him. But they did not come, and when the Nebraska statute released him it became impossible that they should acquire any right unless he made a new promise, and that he did not do.

It is contended by the plaintiffs that the statute of limitations in Nebraska did not run for the reason that the sureties in Scotland made payments on the debt. But it is proper to remember that the theory upon which a payment prevents the statute of limitations from running is that the payment is a new promise by the debtor. In this case there was no new promise for the reason that the surety in Nebraska, if he was a surety, knew nothing about these payments being made and, therefore they could not be his

promise. To illustrate: Suppose that A sues B for contribution as a cosurety with him on the bond of A, B, and C to D, which bond A has paid, and suppose B's execution of the bond was obtained by duress, a good defense to an action by D in whose favor the bond was given, and equally and surely a good defense in an action for contribution by A; for if B had no liability on the bond, being compelled to execute it by duress, his defense to an action for contribution could not be defeated by A's act in paying the debt. So, likewise, if B's liability is terminated by the statute of limitations, A cannot by payment of C's obligation, on which A and B are sureties, compel contribution from B. B's obligation is terminated. A remedy against him cannot be revived otherwise than by his own act.

Did the statute of limitations run in Nebraska? In Pingrey, Suretyship and Guaranty (2d ed.) sec. 90, it is said: "The American doctrine is that a part payment by one of several joint debtors is inoperative to prevent the running of the statute of limitations as to the others. In order to prevent the running of the statute, payment must be made by the debtor in person, or for him by authority, or for him and in his name without authority, but subsequently ratified by him. The mere fact that he has knowledge of payment being made by his codebtor is not sufficient. Hence, a partial payment of a promissory note or debt by the principal debtor will not suspend the statute of limitations as to the surety." Of course, the same thing must be true as to a surety where the payment is by one or more of his cosureties.

In *Cocke v. Hoffman,* 5 Lea (Tenn.) 105, 40 Am. Rep. 23, it was held: "A surety who pays the debt after the bar of the statute of limitations has attached in his favor, is not entitled to recover contribution from a cosurety equally protected by the statute." That was an action for contribution. Jesse M. Lyons, the intestate of the plaintiff in error, commenced said action January 20, 1867, against James Hoffman, before a justice of the peace, to recover contribution from him as a cosurety for money paid in discharge

of the common debt.   Lyons and Hoffman were sureties for James Richards on a note dated December 14, 1862, and payable one day after date to William Lyons, for $100. Jesse M. Lyons paid this note on the 20th of January, 1875, after the bar of the statute of limitations had become fixed. In the body of the opinion it was said that "it has never been held that if one of such parties (a cosurety) pays the debt after it has ceased to be legal, subsisting and compulsory, as where he is himself protected by the statute of limitations, or by a discharge in bankruptcy, he could recover against a cosurety."

In *Cochran v. Walker's Ex'rs*, 82 Ky. 220, it was held: "A surety who has paid a judgment cannot enforce contribution against his cosurety, if, when the debt was paid, the statute of limitations ran as between the original obligee and the cosurety or his executor."   In the body of the opinion it is said: "It is conceded that, if one surety pays the debt to his principal after the running of the statute, he has no right of contribution against his cosurety, so as to defeat the plea of limitation."

In note c, 98 Am. St. Rep. 44 (*Stockwell v. Mutual Life Ins. Co.*, 140 Cal. 198), it is said: "The general rule is that where one joint debtor pays a debt which is barred by limitation, without the consent of his codebtor, he is not entitled to contribution from him"—citing many authorities.

In *Spelman v. Talbot*, 123 Mass. 489, it is said in the statement of the case: "The prayer of the bill was for judgment for the amount of the defendants' intestate's contributory share in the sums paid by the plaintiffs, and for general relief.   The answer contained a demurrer for want of equity."   The court held that there could be no recovery, "inasmuch as it (the claim in the case) did not come into existence until after the period had arrived at which the administrators of the deceased were relieved by law of all liability."   While this is not the usual case for contribution, the nature of it is the same.

In *Turner's Adm'r v. Thom*, 89 Va. 745, it is held: "To entitle one joint obligor to recover from his co-obligor mon-

ey paid by him in excess of his proportion, the payment must have been made upon a debt for which the latter was legally liable at time of the payment, and which the obligor paying was compellable to pay, and not upon a debt that was barred as to the obligor sought to be charged."

It was a suit for contribution. The court said in the body of the opinion: "For, whether the doctrine of contribution 'is the result of a general equity which equalizes burdens and benefits,' or originates in a contract which the law implies, that the joint promisors, at the time of the giving of the joint obligation, mutually promise each other that, if one is compelled to pay more than his proportion of the joint debt, the other will indemnify the one so paying to the extent of the excess over his just proportion, it is equally clear that the payment must have been made upon a debt for which the defendant was legally liable at the time of the payment, and which the obligor who pays was compellable to pay, and not upon a debt which was barred as to the obligor sought to be charged"—citing Wood, Limitations, 321, 322; *Bell v. Morrison,* 1 Pet. (U. S.) *351; 1 Story, Equity Jurisprudence (13th ed.) sec. 325, and note; *Fordham v. Wallis,* 10 Hare (Eng.) *217.

In *Stockmeyer v. Oertling,* 35 La. Ann. 467, it was held: "The party from whom contribution is demanded must have been under a legal obligation to pay at the time payment was made by him who demands the contribution." In the body of the opinion it was said: "The party from whom contribution is demanded must have been himself under a legal obligation to pay at the time payment was made by him who demands the contribution."

In *McLin v. Harvey,* 8 Ga. App. 360, it was held: "As a general rule, one surety cannot recover contribution from another when the debt paid by the surety seeking contribution was not binding either on the principal or on the other surety. * * * The right of contribution does not rest on the original contract, but arises out of the relation, created thereby, of a common obligation, and the contract implied therefrom of discharging the common obligation equally,

and when one surety or indorser on a promissory note is, by operation of law, discharged from the obligation of payment, the obligation thus discharged cannot, without his consent, be revived against him by the voluntary act of a cosurety."

In *Ellicott v. Nichols,* 7 Gill. (Md.) 85, it was held: "A plaintiff who seeks to extricate a case from the act of limitations must show a new promise, within three years prior to the institution of the suit, either express or implied." It was also said: "One copromisor who pays a debt barred by the act, against the consent of his co-debtor, cannot maintain an action for contribution against such co-debtor."

In *Wheatfield Township v. Brush Valley Township,* 25 Pa. St. 112, it is held: "Where a debt is due from several parties, and one of them pays it after it is barred by the statute of limitations, he cannot maintain an action for contribution against the other debtors." In the body of the opinion it is said: "The action for contribution is founded upon the equity arising from the payment by the plaintiff of more than his share of a liability existing at the time against both. Where the plaintiff is not liable for the debt, he has no right to volunteer a payment for the purpose of making the defendant his debtor. And where the defendant is not bound for it, the payment confers no benefit upon him."

In *Williamson's Adm'r v. Administrator of Rees,* 15 Ohio, 572, it is held: "The cosigners of a note, joint and several in its terms, which fell due in 1807, and on which a suit was severally instituted in 1814 against another co-obligor, and judgment recovered, and afterwards suffered to lie dormant 16 years, and then revived, and finally paid, 38 years after it became payable, cannot be compelled to contribute."

In *Hunter v. Robertson & Robertson,* 30 Ga. 479, it was held: "A payment by the principal or maker of a promissory note, before barred by the statute, does not constitute a new point for the running of the statute of limitations as

against the indorser or surety, unless such indorser or surety be a party to such payment."

In *McBride, Adm'r, v. Hunter,* 64 Ga. 655, it was held: "A payment and entry thereof on a note by the principal does not prevent the bar of the statute of limitations from attaching in favor of his security. Nor can the administrator of one who signed a note only as security relieve it from the bar of the statute so far as primary creditors may be affected thereby. Especially is this the case where the note was barred before the death of the security."

In *Rogers v. Burr,* 105 Ga. 432, 447, the decision of Lord Mansfield in *Whitcomb v. Whiting,* 2 Doug. (Eng.) 652 (the beginning of the trouble) is cited, and the court say: " 'The foundation on which it rests was found to be altogether unsatisfactory. In Pennsylvania and some of the other states it has been utterly exploded'—citing *Levy v. Cadet,* 7 Serg. & Rawle (Pa.) 126; 4 Greenleaf, 140; also cases collected in 2 Pick. (Mass.) 581, 583, note 1."

In *Ledoux v. Durrive,* 10 La. Ann. 7, it was held that when one of several sureties has paid the debt he cannot, in an action for contribution against his cosurety, recover when "at the time of such payment the cosurety himself was under no legal obligation to pay."

This court long ago settled that payment by one surety is no bar to the running of the statute of limitations as to another. I would say that the great weight of authority is so strong that it would seem there should be no serious contention about the matter, but for the fact of the existence of this majority opinion. As early as 1877 this court in *Mayberry v. Willoughby,* 5 Neb. 368, held: "To take a debt out of the statute, there must be an unqualified acknowledgment of the debt as originally due, and a promise to pay it; and if the promise is conditional, the condition must be performed before an action can be maintained on the promise." It was also said: "A promise by one joint debtor will not take a debt out of the statute of limitations as to his cocontractors, unless he is specially and severally authorized by them for that purpose." The moral right of

the statute and the wisdom of its policy were commented upon by Justice Gantt, who said: "Hence, the law must be regarded as designed to protect persons from ancient claims, whether well or ill founded; and its tendency is to produce speedy settlements, and if such settlements are not made within the time limited by the law, its effects are such as to extinguish the legal liability upon the debt, unless it be revived by a new promise; and therefore if the creditor by his own fault and laches permits the statute to attach, whatever may be the nature or character of his claim, he cannot complain of the operation of the law, since it is by his own negligence that it can be brought to bear against him."

There was nothing to prevent the sureties in Scotland from paying the debt there within five years after it fell due, and then they could have come to Nebraska and could have sued the defendant here within that time. By so doing they could have recovered a judgment for contribution money from the defendant to the extent of his share of the debt. But they wait 17 years until the principals have failed and until they have gone through bankruptcy. They wait until the property mortgaged in Scotland, in which this defendant had an interest, has been sold, probably for very much less than its value. They seem to have had possession of this property, and after the defendant has nothing left in Scotland of his inheritance they try to get judgment against him in Nebraska and to absorb the results of his 25 years of labor here.

It is contended that the Scotch sureties by the payment of the debt of Scotland kept alive some sort of living principle in it.

In *Dwire v. Gentry*, 95 Neb. 150, it is said: "The payment of interest on a note by a principal without the authority, knowledge or consent of the surety will not stop the running of the statute of limitations as to the surety." In the body of the opinion it is held: "That the statute of limitations is one of repose, and that when the time limited by it has expired then in legal contemplation the debt is

101 Neb.—10

extinguished, and can only be revived by a new promise by the person sought to be charged or by some person lawfully authorized by him for that purpose." If we apply the principle stated in that case to the instant case it is apparent that the debt in Scotland had been outlawed in Nebraska, and that no suit could be maintained upon it here. It follows, therefore, that the Nebraska surety did not stand upon the same footing and did not bear the same burden borne by the Scotch sureties under their very long winded statute of limitations.

In *Dwire v. Gentry, supra,* the case of *Omaha Savings Bank v. Simmeral,* 61 Neb. 741, was relied upon. Mr. Justice Letton, referring to the last-named case, quotes from it: "No payments were made on the note by Redick. Simmeral, the principal on the note, made several payments, which were without the knowledge or consent of Redick, the surety. The payments so made did not toll the statute as to Redick."

In *Mizer v. Emigh,* 63 Neb. 245, it is said: "A payment made on an account by a person other than the debtor, without his authority, knowledge and consent, will not toll the running of the statute of limitations." In that case the statute of limitations was interposed as a defense and was sustained by the court below, which rendered a judgment for the defendant. This court affirmed the judgment.

Along the same line as the cases above cited and quoted from are *Bell v. Morrison,* 1 Pet. (U. S.) *351; *Coleman v. Fobes,* 22 Pa. St. 156; *Screven v. Joyner,* 1 Hill Ch. (S. Car.) *252; *Willoughby v. Irish,* 35 Minn. 63; *Waughop v. Bartlett,* 165 Ill. 124; *Bulkeley v. House,* 62 Conn. 459; *Oldham v. Broom,* 28 Ohio St. 41; *Smith v. Coon,* 22 La. Ann. 445; *Pfenninger v. Kokesch,* 68 Minn. 81; *Harper v. Fairley,* 53 N. Y. 442; *Hance v. Hair,* 25 Ohio St. 349; *Mozingo v. Ross,* 150 Ind. 688; *Bottles v. Miller,* 112 Ind. 584; *Littlefield v. Littlefield,* 91 N. Y. 203; *Kallenbach v. Dickinson,* 100 Ill. 427; *Myatts & Moore v. Bell,* 41 Ala. 222; *Steele v. Souder,* 20 Kan. 39; *Tate v. Clements,* 16 Fla. 339; *Van Keuren v. Parmelee,* 2 N. Y. 528; Angell,

Limitations (6th ed.) sec. 259; 2 Wood, Limitations (4th ed.) sec. 285. In that section it is said that the doctrine of *Whitcomb v. Whiting,* 2 Doug. (Eng.) 652, is repudiated; that "the courts, without any express legislation, have repudiated the doctrine as unsound, predicated upon erroneous reasoning, and opposed to the spirit of these statutes. Especially is this the case in New Hampshire, Pennsylvania, Tennessee, Kansas, Florida, Maryland, Illinois, and by the United States supreme court;" also, that the doctrine in *Whitcomb v. Whiting* "has been nearly obliterated by legislative and judicial action."

I think that I have examined all the cases cited in the majority opinion. Some appear to be overruled. Only one seems to justify the views expressed in the majority opinion. It is *Aldrich v. Aldrich,* 56 Vt. 324, where the plaintiff and defendant were cosureties on a promissory note, and the principal and sureties were residents of Vermont, and after the statute of limitations became a bar in Vermont the plaintiff went to New Hampshire where the statute of limitations is no defense, and was there sued and judgment rendered against him when he paid the debt. It was held that he had an action for contribution against his cosurety. In *Waughop v. Bartlett,* 165 Ill. 124, 133, it is said: "One joint maker of a note cannot, by payment thereon or any other act, stop the running of the statute of limitations against another joint maker, except when duly authorized for that purpose." In the body of the opinion it is said: "The note in this case shows indorsements of interest thereon, at regular semiannual periods, from its date up to January 1, 1890. These indorsements of interest were all made by the holder of the note or his representative in the state of Massachusetts. Of themselves they would not constitute a new promise."

Justice Story in delivering the opinion of the court in *Bell v. Morrison,* 1 Pet. (U. S.) *351, *367, quoted Lord Mansfield's opinion in *Whitcomb v. Whiting,* 2 Doug. (Eng.) 652, where he said: "Payment by one is payment for all, the one acting virtually as agent for the rest;

and, in the same manner, an admission by one is an admission by all; and the law raises the promise to pay when the debt is admitted to be due." Justice Story said of this very brief exposition of a legal principle: "This is the whole reasoning reported in the case, and is certainly not very satisfactory. It assumes that one party, who has authority to discharge has, necessarily, also authority to charge the others; that a virtual agency exists in each joint debtor to pay for the whole; and that a virtual agency exists, by analogy, to charge the whole. Now, this very often constitutes the matter in controversy. It is true that a payment by one does inure for the benefit of the whole; but this arises not so much from any virtual agency for the whole, as by operation of law; for the payment extinguishes the debt. If such payment were made, after a positive refusal or prohibition of the other joint debtors, it would still operate as an extinguishment of the debt, and the creditor would no longer sue them. In truth, he who pays a joint debt pays to discharge himself; and so far from binding the others conclusively by his act, as virtually theirs also, he cannot recover over against them, in contribution, without such payment has been rightfully made, and ought to charge them. When the statute has run against a joint debt, the reasonable presumption is that it is no longer a subsisting debt; and therefore there is no ground on which to raise a virtual agency to pay that which is not admitted to exist."

Eighteen of the courts of last resort in the United States, which I have examined, together with the United States supreme court, have declared for the doctrine which I have endeavored to express in this dissent. If I am right, there is against them only the highest tribunal of the state of Vermont. The majority opinion seems to disregard the decisions of the supreme court of our own state.

In note 17, sec. 287, 2 Woods, Limitations (4th ed.) it is said: "The earlier decisions in New York following *Whitcomb v. Whiting* (see *Johnson v. Beardslee,* 15 Johns. (N. Y.) 3; *Patterson v. Choate,* 7 Wend. (N. Y.) 441) were

overruled in 1849, in *Van Keuren v. Parmelee*, 2 N. Y. 523, 51 Am. Dec. 322."

In the body of the text (section 285) it is said: "The doctrine of *Whitcomb v. Whiting*, 2 Doug. (Eng.) 652 that an acknowledgment, new promise, or payment, made by one of two or more joint contractors, will remove the statute bar as to all, has practically but little force at the present day, as in many of the states the legislature has expressly overridden it by providing that no acknowledgment, promise, or part payment made by one joint debtor shall deprive the others of the benefit of the statute; * * * especially is this the case in New Hampshire, Pennsylvania, Tennessee, Kansas, Florida, Maryland, Illinois and by the United States supreme court; while in Connecticut, New Jersey, Rhode Island, and Delaware, the doctrine of *Whitcomb v. Whiting* is still adhered to." Many authorities are cited against the doctrine. It is also said in the text that the doctrine of *Whitcomb v. Whiting* "has been nearly obliterated by legislative and judicial action." In addition to the authorities above cited, which are against the doctrine of *Whitcomb v. Whiting*, are the following states mentioned in note 3, under section 285: Alabama, Iowa, Minnesota, Kansas, South Carolina, Ohio, California, Oregon, Nevada, Nebraska, Texas, Arizona, Dakota, Idaho, Montana, Utah, and Wyoming.

If I have correctly counted the decisions as they are cited, the courts of last resort in 22 states have repudiated the doctrine of *Whitcomb v. Whiting* as it was laid down by Lord Mansfield.